IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



FILED

MAR 2 3 2011

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

ACTIVEVIDEO NETWORKS, INC.,

    Plaintiff,

v.

CIVIL ACTION NO. 2:10cv248

VERIZON COMMUNICATIONS, INC.,
VERIZON SERVICES CORP.,
VERIZON VIRGINIA INC., and
VERIZON SOUTH INC.,

    Defendants.

*ORDER*

Before the Court is Parties request that the Court construe twenty-two (22) terms found in U.S. Patent Nos. 5,526,034 (the "'034 patent"), 5,550,578 (the "'578 patent"), 6,100,883 (the "'883 patent"), 6,034,678 (the "'678 patent"), and 6,205,582 (the "'582 patent"), held by ActiveVideo Networks, Inc.'s ("ActiveVideo"), and U.S. Patent Nos. 5,682,325 (the "'325 patent"), 6,169,542 (the "'542 patent"), 6,381,748 (the "'748 patent"), and 7,561,214 (the "'214 patent"), held by Verizon Communications Inc., Verizon Services Corp., Verizon Virginia Inc., and Verizon South Inc. (collectively, "Verizon"). Having thoroughly reviewed the pleadings of the Parties, the Joint Pre-Hearing *Markman* Statement submitted by the Parties, and the patents-in-suit, the Court hereby declines to construe the following nine terms as having been defined explicitly in the patent specifications or as governed by the plain and ordinary meaning: (1) "*television information signal*"; (2) "*interactive mode*"; (3) "*assignable module*"; (4) "*data communication(s) link*"; (5) "*assigning one of a plurality of television information signals*

*carried by the cable distribution network to the requesting home interface controller to satisfy the request*"; (6) "*broadband communication though [sic] the network between a broadband server operated by the selected service provider and the subscriber's terminal*"; (7) "*broadband communication link through the network between one of the information service provider systems associated with the selected service provider and the one terminal*"; (8) "*anchor channel*"; and (9) "*superimposing the first indication over the display of the first anchor channel; including with the first indication a second indication*".

## The Court Declines to Construe Terms Defined by the Patentee

A patentee is entitled to be his own lexicographer, provided that any assigned definition for specific terms is clearly defined in the specification. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995) ("As we have often stated, a patentee is free to be his own lexicographer. The caveat is that any special definition given to a word must be clearly defined in the specification." (citation omitted)); *see also Vitronics Corp. V. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("Although words in a claim are generally given their ordinary and customary meaning, a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history."). Where terms are set off by quotation marks in the specification, it is a strong indication that what follows is a definition, and a district court need not further construe terms that have been expressly defined by the inventor. *See Sinorgchem Co., Shandong v. Int'l Trade Comm'n*, 511 F.3d 1132, 1136 (Fed. Cir. 2007). Furthermore, a patentee may not later recant a definition that he previously set forth in the specification. *See id.* (holding that where the patentee clearly defines a term in the specification,

2

"the patentee must be bound by the express definition").

In this case, the term *"television information signal,"* as that term is used in Claim 1 of the '034 patent, Claim 8 of the '578 patent, and Claim 1 of the '678 patent, is specifically defined in the specifications of those patents as "any signal that may be utilized by a television for video display, regardless of the form, including a standard NTSC-modulated rf carrier, an MPEG-compressed digital data stream, or any other format." '034 patent col. 5 ll.33-37 (filed May 3, 1993). Therefore, the Court declines to further construe this term and adopts the definition of *"television information signal"* as set forth in the patent specification. Similarly, the term *"interactive mode"* as that term is used in Claim 1 of the '034 patent and Claims 1, 13, and 24 of the '883 patent is defined in the specifications of those patents as a mode in which "the node is providing an information service to the home interface controller; the home interface controller may, but need not, be furnishing data to the node as to what information service to provide." '034 patent col. 5 ll.40-44. Accordingly, the Court declines to further construe this term and adopts the definition of *"interactive mode"* as set forth in the specification. Finally, the term *"anchor channel"* as it appears in Claim 9 of the '214 patent, is defined in the patent specification as "a channel of a video distribution system which has at least one other channel associated therewith." '214 patent col. 4 ll.17-20 (filed Nov. 4, 1997). Thus, the Court declines to further construe this term and adopts the definition of *"anchor channel"* as set forth in the '214 patent specification.

### The Court Declines to Construe Terms Where the Plain and Ordinary Meaning is Clear

"[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims." *02 Micro Int'l. Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). Instead, "[c]laim construction is a matter of resolution of disputed

3

meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement." *Id.* (quoting U.S. Surgical Corp. V. Ethicon, Inc., 103 F.3d 1554, 1568 (Fed. Cir. 1997)). Accordingly, a claim term "should be construed by the Court whenever there is an actual, legitimate dispute as to the proper scope of the claims." *Sunbeam Prods., Inc. v. Hamilton Beach Barnds, Inc.*, No. 2010 WL 3291830, at *1 (E.D. Va. Aug. 19, 2010) (*Markman* Order).

The term *"assignable module"* appears in Claim 8 of the '034 patent and Claim 25 of the '883 patent. Claim 8 of the '034 patent provides, "A system according to claim 1, wherein the node means includes: a plurality of multimedia processing means, each such multimedia processing means being an *assignable module* for providing an information service to at least one home interface controller means . . ." Claim 25 of the '883 patent provides, "The interactive television information system according to claim 24 wherein said processor is one of a plurality of processors, each processor being an *assignable module* to one of said home interface controllers in interactive mode." Having reviewed the claims and the patent specifications, the Court finds that the plain and ordinary meaning of the term *"assignable module"* is clear and apparent from the claims themselves and the patent specification. Accordingly, the Court declines to construe this term.

The term *"data communication(s) link"* appears in Claims 8 and 9 of the '578 patent, Claim 13 of the '883 patent, Claim 1 of the '678 patent, and Claim 5 of the '582 patent. Claim 8 of the '578 patent is representative of the use of the term *"data communication(s) link"* in the other asserted claims and provides, "An interactive television information system . . . the system comprising: a plurality of home interface controllers, one such home interface controller

4

associated with each subscriber television, for providing an output in communication with the subscriber television and having (i) a signal output for television information signal and (ii) a data transceiver operative over a *data communications link* to the headend; . . ." Given the use of the term *"data communication(s) link"* in the patent claims and in light of the patent specifications, the Court finds that the plain and ordinary meaning of this term is clear and thus, declines to construe this term.

The phrase *"assigning one of a plurality of television information signals carried by the cable distribution network to the requesting home interface controller to satisfy the request"* appears in Claim 1 of the '678 patent. Given the fact that the term "television information signal" is defined in the patent specification, the Court finds no need to further construe this phrase. The plain and ordinary meaning of this phrase is clear from its use in Claim 1 of the '678 patent. Similarly, the phrases *"broadband communication though [sic] the network between a broadband server operated by the selected service provider and the subscriber's terminal"* and *"broadband communication link through the network between one of the information service provider systems associated with the selected service provider and the one terminal"*, which appear in Claim 1 and 28 of the '325 patent, respectively, do not require construction, as the plain and ordinary meaning of these phrases is apparent from the claims. Finally, the phrase *"superimposing the first indication over the display of the first anchor channel; including with the first indication a second indication"*, which appears in Claim 9 of the '214 patent, does not require further construction as the plain and ordinary meaning of this phrase is also clear from the context of the claim and the patent specification. Accordingly, the Court declines to construe each of these phrases, and will apply the plain and ordinary meaning of these phrases in further proceedings.

Accordingly, in preparation for the *Markman* Hearing scheduled for March 23, 2011, it is hereby **ORDERED** that the Parties in the above-styled matter shall present arguments only with respect to those claim terms contained in the Joint Pre-Hearing *Markman* Statement, which are not specifically addressed by this Court's Order.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel and parties of record.

*IT IS SO ORDERED.*

/s/ Raymond A. Jackson
Raymond A. Jackson
United States District Judge

Norfolk, Virginia
March 23, 2011