## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

| | |
|---|---|
| ACTIVEVIDEO NETWORKS, INC. <br><br> Plaintiff/Counterclaim-Defendant, <br><br> v. <br><br> VERIZON COMMUNICATIONS INC., VERIZON SERVICES CORP., VERIZON VIRGINIA INC. AND VERIZON SOUTH INC., <br><br> Defendants/Counterclaim-Plaintiffs. | Civil Action No. 2:10-cv-248 RAJ/DEM |

## ACTIVEVIDEO'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW REGARDING DAMAGES

ActiveVideo Networks, Inc. ("ActiveVideo") hereby opposes Defendants Verizon Communications, Inc., Verizon Services Corp., Verizon Virginia, Inc., and Verizon South Inc.'s (collectively "Verizon") motion for judgment as a matter of law regarding damages seeking to exclude the testimony of ActiveVideo's damages expert, Michael J. Wagner.

## I.      INTRODUCTION

Verizon's renewed motion to exclude the opinion testimony of ActiveVideo's expert Michael Wagner fails to present any new grounds for such relief. Verizon's motion simply reasserts its arguments based solely on Verizon's disagreement with certain assumptions Mr. Wagner makes in the course of his analysis. These arguments are directed to the weight of Mr. Wagner's testimony, not its admissibility and, thus, are not a proper basis for exclusion of expert testimony. As such, Verizon's motion should be denied for the same reasons that its earlier motion to exclude Mr. Wagner's testimony was denied.

As shown by the evidence presented at trial, Mr. Wagner based his analysis on Verizon's own documents and witnesses. As this Court correctly noted in denying Verizon's previous motion to exclude Mr. Wagner's testimony, "the issues raised by Verizon with respect to Mr. Wagner's testimony and reports are best reserved for cross-examination or the presentation of contrary evidence." Order Denying Motion to Exclude ("Order") at 7 [D.E. 785]. Verizon cross-examined Mr. Wagner and has the opportunity to present evidence to support Verizon's disagreements with Mr. Wagner's analysis. The trier of fact is to determine the merits of Mr. Wagner's damages opinions. In short, given that Verizon's arguments are no more persuasive now than they were *in limine*, Verizon's motion must be denied.

## II.   APPLICABLE LAW

Judgment as a matter of law is appropriate only when "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the [non-moving] party." Fed. R. Civ. P. 50(a)(1). The evidence must be viewed in the light most favorable to the non-moving party and the non-movant must be given the benefit of all reasonable inferences. *See Ericsson, Inc. v. Harris, Corp.*, 352 F.3d 1369, 1372 (Fed. Cir. 2003). In assessing whether there is sufficient evidence to submit an issue to the jury, Courts must keep in mind that passing upon "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000). Courts in this district have held that "JMOL should not be granted unless (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only be the result of sheer surmise and conjecture or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair-minded men could not arrive at a verdict against him." *MercExchange, L.L.C. v. eBay*, 660 F. Supp. 2d 653,

657 (E.D. Va. 2007) (quoting *Jamesbury Corp. v Litton Indus Prods. Inc.*, 756 F.2d 1556, 1558 (Fed. Cir. 1985)).

All relevant evidence is admissible, unless specifically excepted by another law or rule. Fed. R. Evid. 402.  Federal Rule of Evidence 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise . . . ."  The Fourth Circuit has held that "the use of the disjunctive indicates that a witness may be qualified as an expert on any one of those five listed grounds." *The Harvester, Inc. v. Rule Joy Trammell & Rubio, LLC*, 2010 U.S. Dist. LEXIS 66519 *2 (E.D. Va. July 1, 2010) (citing *Friendship Heights Assocs. v. Vlastimil Koubek A.I.A.*, 785 F.2d 1154, 1159 (4th Cir. 1986)).  The testimony of such a witness must be "based on sufficient facts or data," and must be the "product of reliable principles and methods" that are "applied . . . reliably to the facts of the case."  Fed. R. Evid. 702.  The proponent of expert testimony need only demonstrate admissibility by a preponderance of the evidence. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993).

## III.   ARGUMENT

### A.   Verizon's Challenges to Mr. Wagner Go to the Weight, not the Admissibility, of Mr. Wagner's Opinions Regarding Damages.

Verizon does not challenge Mr. Wagner's basic methodology:  Mr. Wagner applies the well-known *Georgia Pacific*[1] factors to determine the amount, following a hypothetical negotiation, that Verizon would have agreed to pay ActiveVideo for the right to use the infringing VOD system prior to the time the infringement began.  Instead, Verizon's motion to exclude Mr. Wagner's opinions is based solely on Verizon's disagreement with certain

---

[1] *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

assumptions Mr. Wagner makes in the course of his analysis.  This is not a proper basis for exclusion of expert testimony.  As this Court recently noted, "[t]he asserted fallibility of [an] expert's assumptions affect[] the weight of his testimony, not its admissibility." *Coleman v. Tyson Farms, Inc.*, No.: 2:10-cv-403, 2011 U.S. Dist. LEXIS 51633, *8 (E.D. Va. April 13, 2011) (J. Stillman) (*citing Wilder Enters., Inc. v. Allied Artists Pictures Corp.*, 632 F.2d 1135, 1144 (4th Cir. 1980)).  Also, as the Fourth Circuit noted in *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999), "the court need not determine that the expert testimony a litigant seeks to offer into evidence is irrefutable or certainly correct."  As with all other admissible evidence, expert testimony is subject to being tested by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Id.* at 261 (*quoting Daubert,* 509 U.S. at 596).  Similarly, the Federal Circuit recently noted:

> Under *Daubert*, a district court is required to ensure that any scientific testimony is not only relevant, but reliable; when the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy, above this minimum threshold, may go to the testimony's weight, but not its admissibility.

*i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010).

Here, Verizon does not dispute Mr. Wagner's methodology and that the evidence relied upon by Mr. Wagner is sufficiently related to the case at hand.  Rather, "[a]t their heart," Verizon's "disagreements are with Wagner's conclusions, not his methodology." *See id.* at 854 (holding that the district court properly admitted the expert testimony on damages).  As such, Verizon has not presented grounds for judgment as a matter of law.

1.      *Mr. Wagner Does Not Misapply the Entire Market Value Rule.*

Verizon contends that Mr. Wagner's opinion testimony regarding the value of VOD should be excluded on the basis that Mr. Wagner "misapplies" the "entire market value" rule.

Verizon Mem. in Sup. at 3.  Verizon is incorrect.  Mr. Wagner is not applying the entire market

value rule at all.  Rather, Mr. Wagner's damages analysis is directed to attempting to isolate the

value of the infringing VOD system to Verizon, which Verizon's own documents and witness

testimony confirm extends far beyond just the price a subscriber pays for downloading a

transactionally priced VOD offering.  Verizon's own evidence shows that use of the infringing

technology is valuable to Verizon for those subscribers who use only "free" VOD and, indeed, is

valuable to Verizon even with respect to those subscribers who never actually use VOD at all.

Substantial evidence supports Mr. Wagner's opinion that the value of the infringing VOD system

to Verizon extends far beyond the direct revenue paid to Verizon by customers who order a

transactionally priced VOD service offering.  Verizon repeatedly acknowledges – *over and over*

*again* – that the infringing VOD system allows it to acquire and retain FiOS subscribers.  Mr.

Wagner's attempt to capture this value in his damages opinion is entirely proper and does not

misapply the entire market value rule

> 2.      *Verizon's Own Documents Establish That VOD Is Key to Attracting and*
> *Retaining FiOS TV Customers.*

Verizon contends that Mr. Wagner's admission that there are a number of factors other

than VOD that contribute to the success of FiOS TV renders his damages analysis at variance

with the entire market value rule.  To the contrary, Mr. Wagner did not state that factors other

than VOD form the basis for demand for FiOS TV.  Moreover, just because Mr. Wagner agreed

that "there are a number of factors that contribute to the success of FiOS TV" (Trial Tr. at

1025:23-24), does not mean that VOD is not the basis for demand for the FiOS system.  This

Court previously addressed this same argument and properly recognized that "ActiveVideo has

submitted substantial evidence to demonstrate that VOD (or the patented feature) is the basis for

consumer demand for the Verizon FiOS system or substantially contributed to the value of the

system." Order at 6 [D.E. 785]. This same evidence establishing that VOD and the other accused services drive demand for FiOS TV was also presented to the jury. For example, Mr. Wagner discussed a May 23, 2007 internal Verizon presentation entitled "VOD PPV Update" which states that "VOD is emerging as a critical driver of customer satisfaction," "Customers are passionate about VOD & they let us know," and "Why VOD?…Differentiate from satellite based on features …<u>Acquire new customers and reduce churn</u>." PX260 at 7 (emphasis added) (discussed at Trial Tr. at 980:17-981:08).

Many other Verizon documents that Mr. Wagner discussed show that the accused VOD system has been and continues to be critical to the success of FiOS TV by attracting and retaining customers and generating revenue, regardless of whether those customers use VOD:

- "Customers with any kind of On-Demand usage have significantly lower churn than non-users." PX0258 (discussed at Trial Tr. at 996:19-997:22);

- "VOD is a key competitive acquisition tool in the pay TV market" and "Demand for VOD increases encouraging new entrants." PX264 at 80 (discussed at Trial Tr. at 979:19-980:16);

- "On demand has emerged as the preferred opportunity by video providers to drive digital penetration." PX611 at 47 (discussed at Trial Tr. at 982:06-983:19);

- "Why VOD?... Acquire new customers and reduce churn." PX260 at 7 (discussed at Trial Tr. at 980:17-981:08);

- "More competitors are focusing on VOD,  Cable providers saw 30 - 40% reduction in churn by focusing on VOD.  Believe VOD is key part of strategy." PX268 (discussed at Trial Tr. at 988:19-990:07);

- Content purchased by Distributors is increasingly available as free VOD supported by ads and used as a subscriber retention tool." PX404 at 3;

- "VOD Users 2x as Likely to Keep Cable than non-VOD users." PX259 at 23 (discussed at Trial Tr. at 995:25-996:15).

Mr. Wagner also testified that he relied upon the testimony of Verizon's 30(b)(6) deposition witness, Joseph Ambeault, that the "primary purpose" of VOD for Verizon is to

acquire new FiOS subscribers.  Mr. Wagner testified that he found it significant that Mr.

Ambeault testified that "Free Video on Demand content, just like live channels or widgets or any

content we offer, has a primary purpose in our product planning to acquire customers." *See* Trial

Tr. at 983:20-984:16.  Mr. Wagner also testified that he relied upon Verizon's own studies the

relationship between VOD usage and churn and that confirmed that VOD significantly reduces

churn.  *Id*. at 996:19-997-22.

Furthermore, Mr. Wagner also testified that he relied upon reports produced by third-

parties showing that it is well-known in the telecommunications industry that offering VOD

helps service providers retain customers.  Mr. Wagner discussed an annual report by the Federal

Communications Commission ("FCC") wherein the FCC concluded that "Cable companies view

VOD as a competitive service to DVD/VHS rentals and a means to help <u>reduce subscriber</u>

<u>churn</u>." PX724 (emphasis added) (discussed at Trial Tr. at 992:02-25).  In addition, Mr. Wagner

discussed reports by industry analysts noting that VOD reduces churn.  Trial Tr. at 993:01-

995:14.

Mr. Wagner's testimony appropriately relied on this evidence in forming his opinion that

the value of the accused services, for purposes of determining the reasonable royalty, exceeded

the incremental VOD revenues to Verizon, especially since Mr. Ambeault admitted in his

deposition that all FiOS TV subscribers pay Verizon for use of the infringing VOD system

regardless of whether they actually use the system.  Ambeault Dep. Tr. Pg. 179:9-25.

3.     *Verizon Relies Upon Inapposite Cases.*

This Court properly concluded that "[t]his case is distinguishable from *Uniloc*...." Order

at 5-6 [D.E. 785].  The above facts in evidence are markedly different than the facts at issue in

*Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318-19 (Fed. Cir. 2011), where "it was

undisputed the patented invention did not create the basis for customer demand or substantially

create the value of the component parts as required under *Lucent.*"  Order at 5-6 [D.E. 785].

Here, "ActiveVideo has submitted substantial evidence to demonstrate that VOD (or the patented

feature) is the basis for consumer demand for the Verizon FiOS system or substantially

contributed to the value of the system."  *Id.*  As such, this Court should again deny Verizon's

motion to exclude Mr. Wagner's testimony on the grounds that he has misapplied the entire

market value rule.[2]

> ### 4.     *Mr. Wagner's Churn and Gross Adds Models Rely On The Same Documents That Verizon Generated And Relied On To Run Its Business.*

Verizon challenges Mr. Wagner's opinion that Verizon's use of the infringing VOD

system has benefitted Verizon in the form of "gross adds" to billing and reduced churn.  Verizon

claims that the documents relied on by Mr. Wagner show only a "correlation" and not

"causation."  Verizon Mem. in Sup., at 4.  Again, Verizon's arguments go the weight of Mr.

Wagner's testimony, not its admissibility.  As Mr. Wagner explained, in reaching his "gross

adds" conclusion, he studied the number of customers that DirecTV acquired after it began

offering VOD in the third quarter of June 2008.  Trial Tr. at 1031:03-19.  That DirecTV

executives made statements in 2009 suggesting that other factors may also have contributed to

subscriber growth, does not render Mr. Wagner's opinion inadmissible.  Simply because Verizon

disagrees with Mr. Wagner's conclusion that VOD caused new customers to join DirecTV is not

grounds for exclusion.  *See i4i,* 598 F.3d at 852 ("when the methodology is sound, and the

evidence relied upon sufficiently related to the case at hand, disputes about the degree of

relevance or accuracy, above this minimum threshold, may go to the testimony's weight, but not

---

[2]  Verizon's reliance upon *Cheetah Omni, LLC v. Verizon Services Corp.,* No. 09-cv-260, Dkt.
No. 399 (E.D. Tex. March 8, 2011) is also unavailing.  Although most of the facts of this case
are sealed precluding a thorough review, it is sufficient to note that the expert had "not
sufficiently tied this royalty base to the facts of the case."  Here, the evidence of record
establishes that VOD drives customer demand and revenue for FiOS TV.

its admissibility.").

Verizon's argument that Mr. Wagner fails to consider a number of other alternative causes of reduced churn other than VOD usage (Verizon Mem. in Sup. 5) is both incorrect and, in any event, not a valid basis to exclude Mr. Wagner's testimony.  Mr. Wagner's conclusions regarding churn are based in part on Verizon's own churn studies.  These Verizon documents and others show that Verizon itself believes that VOD is the cause of reduced churn:

- "VOD viewed as a key technology to <u>reduce digital churn</u>."  PX611 at 52;

- "More competitors are focusing on VOD, Cable providers saw 30 - 40% <u>reduction in churn</u> by focusing on VOD.  Believe VOD is key part of strategy." PX268 (emphasis added);

- "VOD Users 2x as Likely to Keep Cable than non-VOD users."  PX259 at 23;

- "Customers with any kind of On-Demand usage have significantly <u>lower churn</u> than non-users."  PX0258 (emphasis added).

Verizon produced its own churn studies analyzing the relationship between VOD usage and churn and confirmed that VOD resulted in reducing churn.  PX0258.  Mr. Wagner appropriately relied on this evidence in forming his opinion that Verizon's churn rate would be 64% greater if Verizon did not offer VOD.  Mr. Wagner's reliance upon these documents is fully justified by Verizon's own reliance upon these same documents to base its business decisions. Verizon disagreement with this analysis goes to the weight, not the admissibility of Mr. Wagner's testimony and cannot be used to exclude this relevant opinion testimony.  *See i4i*, 598 F.3d at 852.

Moreover, Verizon's reliance upon *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 201 (4th Cir. 2001), is misplaced.  In *Cooper*, the expert "simply failed to provide any medical evidence as to what caused Cooper's specific injuries."  Here, Mr. Wagner relied upon ample evidence showing that VOD is critical to acquiring customers.  Regardless, as the *Cooper* court

noted, "the alternative causes suggested by a defendant normally affect the weight that the jury

should give the expert's testimony and not the admissibility of that testimony." *Id*. at 202.

> 5.    *The Grande and Gemstar Agreements Provide Reliable Benchmarks.*

The first two *Georgia Pacific* factors require consideration of (1) "[t]he royalties received

by the patentee for the licensing of the patent in suit, proving or tending to prove an established

royalty" and (2) "[t]he rates paid by the licensee for the use of other patents comparable to the

patent in suit." 318 F. Supp. at 1120; *see also Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d

1301, 1327 (Fed. Cir. 2009); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir.

2010).  Mr. Wagner testified that the May 1, 2005 ActiveVideo-Grande Agreement and the 2007

Verizon-Gemstar Agreement were most useful to him for purposes of determining the terms of

the royalty agreement that the parties would have reached during the hypothetical negotiation.

*See* Trial Tr. 1003:08-1009:18.

Verizon contends that these agreements selected by Mr. Wagner are not sufficiently

comparable to the agreement ActiveVideo and Verizon would have reached in the hypothetical

negotiation because the 2005 ActiveVideo-Grande Agreement covers both ActiveVideo's

software and patents and that the Verizon-Gemstar agreement does not cover VOD or

ActiveVideo's patents.  Verizon also contends that Mr. Wagner's reliance upon the ActiveVideo-

Grande and the Verizon-Gemstar agreements is contradicted by Mr. Wagner's analysis and

rejection of other agreements.  Verizon's argument, however, goes to the weight, not the

admissibility, of Mr. Wagner's testimony.  Courts have rejected similar arguments challenging

agreements as inapplicable under the first and second *Georgia-Pacific* factors because these

arguments go to the <u>weight</u>, not the <u>admissibility</u>, of the proposed testimony.  *See, e.g., Lear

Auto. Dearborn, Inc. v. Johnson Controls, Inc.*, No. 04-73461, 2011 U.S. Dist. LEXIS 5203

(E.D. Mich. Jan. 20, 2011) (rejecting argument that damages expert "engaged in an

impermissible and unsupported 'apples to oranges' comparison" by using defendant's license agreements as a model for the hypothetical negotiation because that argument "goes to the weight, and not the admissibility, of his proposed testimony."); *Phillip M. Adams & Assocs., LLC v. Winbond Elecs. Corp.*, 2010 WL 3743677 at *3 (D. Utah Sept. 20, 2010) (denying motion to exclude damages expert who used agreements which included more than patent royalties because defendant's argument merely went to "weight and credibility of the expert testimony."). That Verizon disagrees with Mr. Wagner's reliance on these agreements as benchmarks does not make his testimony inadmissible.

      a.     The 2005 ActiveVideo-Grande Agreement Is An Appropriate Benchmark for the First *Georgia-Pacific* Factor.

Mr. Wagner explained in detail why the 2005 ActiveVideo-Grande Agreement provides substantial guidance because it (1) covers ActiveVideo's asserted patents and (2) was entered into at the same time as the hypothetical negotiation. Trial Tr. at 1005:16-22. As Mr. Wagner further explained, after discussing the agreement with ActiveVideo's management, he concluded that the 2005 Grande Agreement was a fair measure of the value of the patents. *Id.* at 1003:16-1005:22. Verizon's disagreement with Mr. Wagner's selection of the Active-Video Grande agreement as an appropriate agreement to consider for purposes of the first *Georgia Pacific* factor is not a valid basis for challenging the admissibility of Mr. Wagner's damages opinion. *See Lucent Techs,* 580 F.3d at 1327 (prohibiting reliance on agreements that are "*radically different* from the hypothetical agreement under consideration").

      b.     The 2007 Verizon-Gemstar Agreement Is An Appropriate Benchmark For the Second *Georgia-Pacific* Factor.

Verizon contends that the 2007 Verizon-Gemstar Agreement is not an acceptable benchmark because the "patents licensed in the Gemstar Agreement do not cover the ActiveVideo asserted patents or even VOD." Verizon Mem. in Sup. at 7. However, to serve as a

benchmark, the agreement need not cover the same exact features or patents; rather, it only must be "sufficiently comparable to the hypothetical license at issue in suit." *Lucent Techs.*, 580 F.3d at 1325.  Mr. Wagner explained that the 2007 Verizon-Gemstar Agreement is comparable because in it "Verizon is the licensee" (Trial Tr. at 1006:19), it is a "pure patent license" (*id.*), and it "showed that for a portfolio of patents that were important to their offering of interactive services they [Verizon] are willing to split the profits with the patent on it." *Id.* at 1009:15-18. Given that the Gemstar Agreement is a pure intellectual property license agreement covering analogous technology, Mr. Wagner properly concluded that this agreement is sufficiently comparable to the hypothetical license. *See Lucent Techs,* 580 F.3d at 1327.

> 6.    *Mr. Wagner's Approach To Valuing So-Called "Free" VOD Is Based On Reliable Economic Principles And Is Admissible.*

Finally, contrary to Verizon's mischaracterization of the record, Mr. Wagner did <u>not</u> concede that his assumption, "that Verizon generates the same amount of revenue from a paid VOD stream (a first run movie) as a free VOD stream (a rerun of a TV program)," is incorrect. Verizon Mem. in Sup., at 8.  Rather, Mr. Wagner simply agreed that the "value" of free VOD and pay VOD are not equal.  Trial Tr. at 1077:02-08.  While the value or revenue generated by different types of VOD may differ, Mr. Wagner properly assumes that the average *profit* per order across all free VOD streams is equal to the average *profit* per order across all paid VOD orders.  Indeed, Mr. Wagner agreed that he "assume[s] that each stream of paid Video On Demand is worth the same as each stream of free Video On Demand" and explained that it was "more complicated" that Verizon's counsel proposed.  Trial Tr. at 1077:09-16.  Verizon's challenge to Mr. Wagner's assumptions and opinions regarding the marginal value of "free" VOD does not provide a basis for exclusion of Mr. Wagner's opinions.  *See Westberry*, 178 F.3d

at 261; *Coleman*, 2011 U.S. Dist. LEXIS 51633, *8 ("[t]he asserted fallibility of [an] expert's

assumptions affect[] the weight of his testimony, not its admissibility.").

## IV.   CONCLUSION

For the reasons provided above, this Court should deny Defendants' motion for judgment

as a matter of law seeking to exclude the testimony of Mr. Wagner.

Dated:  July 23, 2011                                Respectfully submitted,


                                                     */s/ Stephen E. Noona*
                                                     Stephen E. Noona
                                                     (Virginia State Bar No. 25367)
                                                     **KAUFMAN & CANOLES, P.C.**
                                                     150 W. Main Street, Suite 2100
                                                     Norfolk, VA 23510
                                                     Telephone : (757) 624-3000
                                                     Facsimile: (757) 624-3169
                                                     senoona@kaufcan.com

                                                     Nathan W. McCutcheon
                                                     (Virginia State Bar No. 36308)
                                                     David M. Morris
                                                     (Virginia State Bar No. 30146)
                                                     **MORGAN, LEWIS & BOCKIUS LLP**
                                                     1111 Pennsylvania Avenue, NW
                                                     Washington, DC 20004
                                                     Telephone: (202) 739-3000
                                                     Facsimile: (202) 739-3001
                                                     nmccutcheon@morganlewis.com
                                                     dmorris@morganlewis.com

                                                     Daniel Johnson, Jr.
                                                     Michael J. Lyons
                                                     Dion M. Bregman
                                                     Ahren C. Hoffman
                                                     **MORGAN, LEWIS & BOCKIUS, LLP**
                                                     2 Palo Alto Square
                                                     3000 El Camino Real, Suite 700
                                                     Palo Alto, CA 94306-2122

Telephone: (650) 843-4000
Facsimile: (650) 843-4001
djjohnson@morganlewis.com
mlyons@morganlewis.com
dbregman@morganlewis.com
ahoffman@morganlewis.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I herby certify that on July 23, 2011, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Gregory N. Stillman
(Virginia State Bar No. 14308)
Brent L. VanNorman
(Virginia State Bar No. 45956)
**HUNTON & WILLIAMS, LLP**
500 E. Main Street, Suite 1000
Norfolk, VA 23514
Telephone: (757) 640-5314
Facsimile: (757) 625-7720
gstillman@hunton.com
bvannorman@hunton.com

Brian M. Buroker
(Virginia State Bar No. 39581)
Bradley T. Lennie
Justin T. Arbes
**HUNTON & WILLIAMS, LLP**
1900 K Street, NW
Washington, DC 20006
Telephone: (202) 955-1500
Facsimile: (202) 778-2201
bburoker@hunton.com
blennie@hunton.com
jarbes@hunton.com

Henry B. Gutman
Lisa H. Rubin
**SIMPSON THACHER & BARTLETT LLP**
425 Lexington Avenue
New York, New York  10017
Phone:  (212) 455-2000
Fax: (212) 455-2502
hgutman@stblaw.com
lrubin@stblaw.com

*Counsel for Defendants*

_/s/ Stephen E. Noona_
Stephen E. Noona

(Virginia State Bar No. 25367)
**KAUFMAN & CANOLES, P.C.**
150 W. Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3000
Facsimile: (757) 624-3169
senoona@kaufcan.com