IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

ACTIVEVIDEO NETWORKS, INC.
Plaintiff/Counterclaim-Defendant,

v.

VERIZON COMMUNICATIONS INC., VERIZON
SERVICES CORP., VERIZON VIRGINIA INC.
AND VERIZON SOUTH INC.
Defendants/Counterclaim-Plaintiffs.

Civil Action No. 2:10-cv-248
RAJ/DEM

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR A PERMANENT INJUNCTION**

**PUBLIC VERSION**

## I.  INTRODUCTION

Rarely has there been a case where an injunction is more clearly required to do justice than this one. ActiveVideo filed its complaint for patent infringement against Verizon in May 2010. D.I. 1. However, Verizon subsequently made no efforts to mitigate its conduct, and thus continued to infringe. In April 2011, this Court issued a fifty-one page Memorandum and Order rejecting almost all of Verizon's proposed claim constructions, effectively depriving Verizon of a viable non-infringement defense. D.I. 408. Verizon continued to infringe. This Court denied on multiple occasions Verizon's summary judgment requests concerning its proposed contract defense, and at trial, the Court entered judgment as a matter of law against Verizon with respect to its contract defense. D.I. 394, Trial Tr. at 2741:22-2742:10. The Court also struck Verizon's invalidity challenge to the ActiveVideo patents as legally insufficient. Trial Tr. at 2749-50. Verizon continued to infringe. Finally, after a three-week trial in which dozens of witnesses testified, and nearly two hundred documents were received into evidence, a jury concluded that Verizon has indeed infringed not one, but four, of ActiveVideo's patents. Even though Verizon

1

has taken the position that a non-infringing design-around would be easy and inexpensive to implement, Verizon has continued to infringe to this day and gives no indication that it intends to cease its illegal conduct.   It is time for this Court to direct Verizon to do what it (Verizon) should have done voluntarily long ago:   stop infringing ActiveVideo's patents.

Verizon's infringement has caused great harm to ActiveVideo already, and continued infringement will cause further harm that cannot be compensated through money damages.

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████  Additionally, Verizon's decision to take ActiveVideo's technology instead of lawfully purchasing it has harmed ActiveVideo's brand and reputation.   These are some of the many ways in which Verizon's continued infringement is causing irreparable injury to ActiveVideo.   Unless an injunction is issued, ActiveVideo will have lost all of the rights it gained in an incredibly hard fought and contested battle against Verizon's legal army.   As the following will show, ActiveVideo satisfies all of the elements to obtain an injunction and both law and equity demand that the injunction issue.

## II.    APPLICABLE LAW

The patent laws grant to a patent owner the right to exclude others from infringing the patent.   35 U.S.C. § 154(a)(1).   District courts have the authority to grant an injunction to prospectively prevent the violation of a patent owner's rights.   35 U.S.C. § 283.   A plaintiff seeking a permanent injunction must demonstrate:

(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Courts have had little trouble making these findings and issuing an injunction in cases between competitors. *See, e.g., Smith & Nephew, Inc. v. Synthes (U.S.A.)*, 466 F. Supp. 2d 978, 983 (W.D. Tenn. 2006); *TiVo v. EchoStar Commc'ns Corp.*, 446 F. Supp. 2d. 664, 669 (E.D. Tex. 2006) *aff'd in part, rev'd in part on other grounds and remanded*, 516 F.3d 1290 (Fed. Cir. 2008); *Wald v. Mudhopper Oilfield Servs., Inc.*, No. CIV-04-1693-C, 2006 U.S. Dist. LEXIS 51669, *15 (W.D. Okla. July 27, 2006). A permanent injunction is an appropriate way to recognize the high value of intellectual property when it is asserted against a competitor in the patentee's market. *See Trading Techs., Int'l, Inc. v. eSpeed, Inc.*, No. 04C5312, 2008 WL 4531371, at *2 (N.D. Ill. May 22, 2008). Following the *eBay* decision, courts that have denied a permanent injunction have frequently done so because the patentee merely licensed its technology and did not offer its own commercial embodiment, or the scope of the requested injunction was overly broad. *See, e.g., Praxair, Inc. v. ATMI, Inc.*, 479 F. Supp. 2d 440, 442-44 (D. Del. 2007) (proposed injunction required defendant to recall products already sold to third parties); *Sundance, Inc. v. DeMonte Fabricating Ltd.*, No. 02-73543, 2007 U.S. Dist. LEXIS 158 (E.D. Mich. Jan. 4, 2007); *z4 Techs., Inc. v. Microsoft Corp.*, 434 F. Supp. 2d 437, 440-41 (E.D. Tex. 2006); *Voda v. Cordis Corp.*, No. CIV-03-1512-L, 2006 U.S. Dist. LEXIS 63623 (W.D. Okla. Sept. 5, 2006).

A District Court's decision to grant or deny a permanent injunction is reviewed for an abuse of discretion. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 861 (Fed. Cir. 2010).

## III.   ARGUMENT

For the reasons below, all four elements of the *eBay* test are satisfied in this case.  Thus, a

permanent injunction prohibiting the continued infringement of ActiveVideo's patent rights is

appropriate.

### A.   ActiveVideo is Suffering and Will Continue to Suffer Irreparable Injury

The Federal Circuit has stated: "[i]t remains an open question whether there remains a

rebuttable presumption of irreparable harm following *eBay*." *Broadcom Corp. v. Qualcomm*

*Inc.*, 543 F.3d 683, 702 (Fed. Cir. 2008).  However, even if no presumption exists, the facts show

Verizon's past and continued infringement of ActiveVideo's patents has caused and is causing

irreparable injury.[1]

#### 1.   Verizon has Violated ActiveVideo's Right to Exclude

The first factor weighing in favor of a finding of irreparable injury is the jury's finding

that Verizon's FiOS system infringes ActiveVideo's patents.  A patent owner has the right to

exclude others from exploiting the patented invention.  35 U.S.C. § 154(a)(1).  The Federal

Circuit has characterized the right of exclusion as "[t]he essential attribute of a patent grant."

*Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008).  Accordingly,

"infringement may cause a patentee irreparable harm not remediable by a reasonable royalty."

*Id.*  In this case, Verizon's exploitation of ActiveVideo's rights, without its permission, supports

a finding of irreparable injury.  *See ePlus, Inc. v. Lawson Software, Inc.*, No. 3:09cv620, 2011

WL 2119410 at *6 (E.D. Va. May 23, 2011) ("[T]he violation of the right of exclusion during

the limited term of the patent grant is an injury not easily repaired by damages at law.") (*quoting*

*Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, No. 04C5312, 2008 WL 4531371, at *2 (N.D. Ill. May

---

[1] Although ActiveVideo has been awarded a reasonable royalty for a portion of Verizon's past infringement, the permanent injunction inquiry may nevertheless take Verizon's past infringement into consideration. *i4i*, 598 F.3d at 861.

22, 2008)).

2.  Verizon's Decision to Appropriate ActiveVideo's Technology without Permission Has Caused and Will Continue to Cause Irreparable Injury

When Verizon was developing the FiOS system, it wanted ActiveVideo's technology. The parties began discussions in 2005 to investigate integrating ActiveVideo's technology with FiOS. Trial Tr. 285:4-12 (Miller). These discussions matured into frequent meetings between ActiveVideo and Verizon engineers. *See* PX0133; PX0321-PX0336; PX0418; PX0971. Verizon could have purchased ActiveVideo's technology lawfully. Instead, it decided to use ActiveVideo's technology without authority. The resulting infringement has irreparably harmed ActiveVideo.

Had Verizon lawfully purchased ActiveVideo's technology, ActiveVideo would be better situated. At trial, ActiveVideo's CEO, Jeff Miller, testified as to the importance of getting a first nation-wide deployment. Specifically, he testified that "[w]hat we [ActiveVideo] always had needed was to get a deployment somewhere big enough that people would take notice and realize that the system is working and that everything is good, and we can offer some good products." Trial Tr. at 318:17-20. Had Verizon lawfully integrated ActiveVideo's technology, ActiveVideo would have received the big deployment it was seeking. ActiveVideo's reputation would have been bolstered opening doors to further business opportunities. But Verizon did not lawfully purchase ActiveVideo's technology, instead choosing to infringe.

These past harms are clearly relevant to the present permanent injunction analysis. The Federal Circuit has stated that "[p]ast harm to a patentee's market share, revenues, and brand recognition is relevant for determining whether the patentee '*has suffered* an irreparable injury.'" *i4i*, 598 F.3d at 861 (emphasis in original) (*quoting eBay*, 547 U.S. at 391). The *i4i* Court further held that "[a]lthough injunctions are tools for prospective relief designed to alleviate future harm,

by its terms the first *eBay* factor looks, in part, at what has already occurred." *Id.* at 862.  This is

because such injuries are often incalculable and irreparable.  *Smith and Nephew, Inc. v. Arthrex,*

*Inc.*, No. 2:07-cv-335-TJW-CE, 2010 WL 2522428, at *2 (E.D. Tex. June 18, 2010).

The fact that some of the business opportunities that would have been available to

ActiveVideo may have passed does not foreclose issuing a permanent injunction based on

irreparable injury.  *See Commonwealth Scientific and Indus. Research Org. v. Buffalo Tech. Inc.*,

492 F. Supp. 2d 600, 604 (E.D. Tex. 2007) (hereinafter "*CSIRO*") (granting permanent

injunction in favor of research institution in part because lost research opportunities had passed).

Moreover, if Verizon is permitted to continue to infringe ActiveVideo's patents, ActiveVideo

can expect to experience future lost business opportunities, causing further irreparable harm.

Verizon's decision to infringe instead of lawfully purchasing ActiveVideo's technology has

irreparably harmed ActiveVideo and will continue to do so.

3.   ActiveVideo's Revenue, Market Share, Goodwill, and Brand are Being
Damaged

Verizon's infringement is causing business injury to ActiveVideo.  This injury is

manifested in many forms.  First, ActiveVideo's revenues are decreased. ███████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

[2] Citations to the Declaration of Jeff Miller in Support of Plaintiff's Motion for a Permanent
Injunction are abbreviated "Miller Decl., ¶ ___."
[3] Citations to the Declaration of Gary Schanman in Support of Plaintiff's Motion for a Permanent
Injunction are abbreviated Schanman Decl., ¶ ___."



At trial, Verizon argued that many factors contribute to the size of the subscriber base of a cable service provider, other than its ability to offer Video on Demand. *See* Trial Tr. 2034-42. In other words, Verizon may contend that it would be extremely difficult—if not impossible—to determine how many more customers Cablevision would have, and thus how much greater ActiveVideo's

revenues would be, if Verizon did not infringe.  An injunction is best suited to remedy this potentially hard to quantify injury.  *i4i*, 598 F.3d at 862.

Additionally, Verizon's infringement causes non-monetary injuries.  For example, but for Verizon's infringement, ActiveVideo's products and services (supplied through Cablevision and others) would be available to a greater portion of the subscriber market; thus, ActiveVideo's efforts to establish goodwill and further its brand are impeded.  Miller Decl., ¶ 7.  The number of subscribers using ActiveVideo's products is a very important number to potential customers of ActiveVideo for many reasons.  *Id.*  Verizon's infringement decreases this number, damaging ActiveVideo's ability to sell its products to more customers.  *Id.*  The consequences of these harms are not remediable by damages at law, providing further support that injunctive relief is appropriate.  *See i4i*, 598 F.3d at 861.

Verizon may argue that there is no irreparable injury because it does not compete head-to-head with ActiveVideo.  This argument has been frequently rejected, including by the Federal Circuit.  In *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683 (Fed. Cir. 2008), the district court issued an injunction against Qualcomm.  On appeal, Qualcomm argued that, because the patentee did not offer a product that directly competed with Qualcomm's, there was no irreparable harm.  *Broadcom*, 543 F.3d at 703.  The Federal Circuit rejected this argument, finding that the patentee could rely on the fact that it competed <u>indirectly</u> with Qualcomm in a market where competition was measured at a technology level (*i.e.*, "design wins") rather than unit-by-unit sales of identical products, and that its own commercial activities would be irreparably injured by Qualcomm's ongoing infringement in this market.  *Id.* at 702-03.  The lower courts have likewise recognized that irreparable harm can exist in the absence of direct head-to-head competition.  For example, in *CSIRO*, the Eastern District of Texas found irreparable harm and issued a permanent

8

injunction notwithstanding the fact that the patentee did not directly compete with the infringer. 492 F. Supp. 2d at 604.[4]  The fact that Verizon and ActiveVideo are not head-to-head competitors does not negate the real injury ActiveVideo is suffering.[5]

      4.     ActiveVideo Has Expended Resources to Enforce Its Rights

     ActiveVideo has been forced to divert ███████████████████ from its normal business operations to enforce its right to exclude Verizon from infringing its patents. ActiveVideo's costs have been exacerbated by Verizon's aggressive litigation strategy.  From the inception of this case, Verizon made discovery extremely difficult (and therefore costly) for ActiveVideo.  As just one example, Verizon refused to share discovery from a related International Trade Commission (ITC) investigation (In re Certain Digital Set-Top Boxes and Components Thereof, Inv. No. 337-TA-712) even though, in connection with the ITC investigation, Verizon was able to depose many of the ActiveVideo employees who were deposed in the present action.  Verizon's recalcitrant discovery conduct necessitated numerous motions to compel.  *See, e.g.*, D.I. 133 (expedited motion to compel 30(b)(6) deposition), D.I. 173 (motion to compel supplemental interrogatory responses), D.I. 270 (motion to compel source code), D.I. 375 (motion to compel documents and deposition), D.I. 719 (motion to compel inspection).

     Further, Verizon and its team of three outside law firms and numerous in house counsel advanced a plethora of invalidity and unenforceability theories.  Indeed, in the Final Pretrial

---

[4] Moreover, ActiveVideo has a stronger claim for injunctive relief than the plaintiffs in *Broadcom* and *CSIRO*.  In those cases, the plaintiffs did not practice their respective inventions. *Broadcom*, 543 F.3d at 703; *CSIRO*, 92 F. Supp. 2d at 603.  By contrast, ActiveVideo practices its inventions and offers its products and services in the marketplace.  Trial Tr. 282:8-11; Miller Decl., ¶ 2.

[5] To be clear, while Verizon's infringement is causing significant harm to Cablevision, an injunction is appropriate in this case because ActiveVideo itself is suffering irreparable harm not remediable with damages at law.

Order (D.I. 762), Verizon identified the following as triable issues with respect to ActiveVideo's patents: (i) invalidity under 35 U.S.C. § 102; (ii) invalidity under 35 U.S.C. § 103; (iii) invalidity for failure to comply with the enablement requirement of 35 U.S.C. § 112, first paragraph (iv) invalidity for failure to comply with the written description requirement of 35 U.S.C. § 112, first paragraph, (v) invalidity under 35 U.S.C. § 112, second paragraph; (vi) invalidity due to improper inventorship; (vii) unenforceability due to inequitable conduct; (viii) infringement claims barred by laches; and (ix) infringement claims barred by license, release, and covenant not to sue. To the extent that Verizon offered any evidence during trial to support these theories, the Court determined that it was insufficient for any of them to be submitted to the jury. Nevertheless, the large number of Verizon's theories unnecessarily complicated the litigation and increased its costs.[6]

Having spent ███████████ on this enforcement action, ActiveVideo could not pursue other endeavors. *See* Trial Tr. 314:6-16. As this Court has recognized, ActiveVideo's lost opportunities represent a form of irreparable injury. *ePlus*, 2011 WL 2119410 at *12. Similarly, a permanent injunction will reduce the amount of resources ActiveVideo will need to expend on policing Verizon's future conduct. These resources can, instead, be used for research and development, marketing, and other business purposes aimed at growing ActiveVideo. *See ePlus*, 2011 WL 2119410 at *12 (recognizing that expenses for further litigation should injunction not be entered constitutes irreparable harm).[7]

---

[6] Verizon remains determined to protract this litigation as long as possible, thereby increasing the costs to ActiveVideo. On the same day the jury rendered its verdict, Verizon put out a statement saying, "Verizon disagrees with the verdict and is confident that the court of appeals will agree." Declaration of Nathan W. McCutcheon in Support of Plaintiff's Motion for a Permanent Injunction, Exh. A. Verizon continued, "Verizon will not be paying any damages while the appeal is under way." *Id.*

[7] ActiveVideo's decision not to move for a preliminary injunction is not relevant to this inquiry.

5.    Verizon's Continued Infringement Would Encourage Other Parties to Infringe

If Verizon is not enjoined, ActiveVideo will in effect have been compelled to grant Verizon a license.  In other words, without an injunction, Verizon will be placed in no worse position than it would have been had it lawfully obtained a license from ActiveVideo when it started infringing ActiveVideo's patents in 2005.  This outcome would serve to encourage other parties to infringe as there would be no deterrent.  A party could infringe with nothing to lose and everything to gain.  From the infringer's perspective, the only downside to infringement occurs if ActiveVideo detects the infringement, spends the resources to bring suit, and obtains a favorable jury verdict.  However, if the result is a license, this is hardly an outcome to be feared by the infringer.  The infringer would have every reason to infringe, hopeful that either its infringement was not detected, ActiveVideo did not pursue litigation, or that a jury did not find infringement.  This is antithetical to the patentee's right to exclude and would take away from ActiveVideo its right to decide to whom it licenses its technology.  *Odetics v. Storage Tech. Corp.*, 14 F. Supp. 2d 785, 795 (E.D. Va. 1998).  The harm would be irreparable.

6.    Verizon's Continued Infringement Is Damaging, and Will Continue to Damage, ActiveVideo's Bargaining Position

The price a prospective customer is willing to pay ActiveVideo for its technology is logically reduced by Verizon's continued infringement. ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

---

Another Court in this District has recently stated: "there is no requirement that a party must seek a preliminary injunction as the predicate to securing a permanent one.  Nor is the Court aware of authority that failure to seek a preliminary injunction counsels against a finding of irreparable injury."  *ePlus*, 2011 WL 2119410 at *13.  The *ePlus* Court further opined that if the rule were otherwise, courts would be "besieged with motions for preliminary injunctions filed to preserve the right to permanent injunctive relief."  *ePlus*, 2011 WL 2119410 at *13.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████ *Id.; see Transocean Offshore Deepwater Drilling, Inc. v. GlobalSantaFe Corp.*, No. H-03-2910, 2006 WL 3813778, at *5 (S.D. Tex. Dec. 27, 2006) (finding convincing the patentee's argument that the lack of an injunction would cause the patentee to lose part of its commercial negotiating power).

This harm is not hypothetical or speculative. It is a harm ActiveVideo is suffering *at the present moment.* ██████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████

## B.     Remedies Available at Law are Inadequate

Many of the same factors that support a finding of irreparable injury also demonstrate that remedies available at law are inadequate. *See generally Acumed*, 551 F.3d at 1327-28 (considering irreparable harm and lack of adequate remedy at law together). For example and as stated above, Verizon's decision not to lawfully integrate ActiveVideo's technology, and instead appropriate it without permission, denied ActiveVideo the recognition it deserved. This recognition would have increased ActiveVideo's business opportunities. Additionally, ActiveVideo was forced to expend resources in bringing and enforcing this suit against Verizon.

These facts have hampered ActiveVideo's ability to expand its business and pursue other business opportunities. The total monetary value of ActiveVideo's injuries may be difficult to quantify with certainty, and likewise may be difficult to quantify going forward.[8]  Miller Decl., ¶ 9. This tends to support the proposition that monetary damages will not be adequate. *i4i*, 598 F.3d at 862. Further, ActiveVideo has lost and continues to lose market share, goodwill, brand name recognition and bargaining power. Money damages, even if they could be precisely determined, will not put ActiveVideo in the position it would have been had Verizon not infringed. *See generally TiVo*, 446 F. Supp. 2d at 670 (finding that loss of market share and customer base to relatively new company with only one primary product causes "severe injury").

### C.  The Balance of Hardships Favors Granting an Injunction

The balance of hardships prong assesses the relative effect of granting or denying an injunction on the parties. *i4i*, 598 F.3d at 862. Relevant to this inquiry are the parties' respective sizes, products, and revenue sources. *Id.* The effect on third parties is irrelevant under this prong. *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1330 (Fed. Cir. 2008). In this case, the balance of hardships tilts heavily in favor of an injunction.

Verizon is a very large corporation selling many products and services. Only a small fraction of its services infringe ActiveVideo's patents. Further, Verizon's damages expert testified that a non-infringing alternative is available to Verizon that is no more costly than its current system and could be implemented in six to nine months. Trial Tr. 2099:7-13. Accordingly, Verizon will remain a going concern even if forced to cease its infringing activities.

Verizon may argue that ceasing its infringing services would be an unfairly harsh outcome. However, to the extent that this result would inconvenience Verizon, such

---

[8] The damages requested by ActiveVideo at trial were based on a reasonable royalty for a portion of Verizon's past infringement. However, the value of ActiveVideo's lost opportunities was not determined.

inconvenience is a result of Verizon's infringement and does not weigh against an injunction. *TiVo*, 446 F. Supp. 2d at 670 ("The hardship of disabling [the infringing] DVR capabilities to Defendants' DVR customers is a consequence of Defendants' infringement and does not weigh against an injunction."). In addition, it bears noting that Verizon's investment in its infringing system is also irrelevant. The Federal Circuit has held that "neither commercial success, nor sunk development costs, shield an infringer from injunctive relief." *i4i*, 598 F.3d at 863; *see also Acumed*, 551 F.3d at 1330 (finding no abuse of discretion in district court's decision not to consider expenses in designing and marketing infringing product).

ActiveVideo, by comparison, is a small company with only 130 employees. Trial Tr. 314:10-16. The technology covered by the ActiveVideo patents in suit is at the core of ActiveVideo's business. Trial Tr. 282:8-11; Miller Decl., ¶ 2. ActiveVideo has made tremendous investments in developing this technology. Trial Tr. 312:4-13. Crucial to ActiveVideo's ability to realize a return on this investment is the ability to restrict who is able to exploit its technology.

An injunction will not significantly harm Verizon. By contrast, the lack of an injunction will be very detrimental to ActiveVideo. Thus, the third prong of the permanent injunction test is satisfied. *See i4i*, 598 F.3d at 863 (granting injunction where technology covered by patent was central to patentee's business but only a fraction of the infringer's business).

**D.   The Public Interest Would Not Be Disserved**

There is a strong public interest in enforcing a patentee's right to exclude. This interest is expressed in the Constitution. U.S. CONST. art. I, § 8, cl. 8 (Congress shall have the power "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors *the exclusive Right* to their respective Writings and Discoveries.") (emphasis added). By granting to inventors the exclusive right to their inventions, the patent laws provide an

incentive for investments in research and discovery. *See Sanofi-Synthelabo v. Apotex, Inc.*, 470

F.3d 1368, 1383 (Fed. Cir. 2006) ("We have long acknowledged the importance of the patent

system in encouraging innovation. Indeed the encouragement of investment-based risk is the

fundamental purpose of the patent grant, and is based directly on the right to exclude."). If a

patentee did not have the exclusive right to his or her invention, a patent's value would be

marginalized. This would frustrate the goal of "promot[ing] the Progress of Science and useful

Arts." In other words, the public benefits from the just enforcement of a patentee's right to

exclude.

   Verizon may argue that an injunction would inconvenience its customers. As an initial

matter, the lack of the infringing FiOS services for Verizon's customers does not outweigh the

overarching public interest in enforcing a patentee's right to exclude. The infringing services

relate to entertainment, not an issue of public health or safety. Thus, this factor weighs in favor

of an injunction. *See TiVo*, 446 F. Supp. 2d at 670 (public interest favored injunction where

infringing digital video recorders related to entertainment and not to an issue of public health or

any other key interest); *see also Mass Engineered Design, Inc. v. Ergotron, Inc.*, 633 F. Supp. 2d

361 (E.D. Tex. 2009) ("Where products do not relate to a significant compelling public interest,

such as health or safety, this factor weighs in favor of an injunction.").

   Moreover, Verizon has been aware of its infringement for well over a year. *See* D.I. 6

(complaint served on June 9, 2010). Verizon should have been working diligently on a non-

infringing alternative. If Verizon's expert is to be believed, Verizon could implement an

alternative system in six to nine months that would not infringe ActiveVideo's patents. Trial Tr.

at 2084:16-2086:11 (Dr. Carlton).[9]  To the extent its customers would be inconvenienced by an

---

[9] ActiveVideo takes no position in this motion on the viability of any potential design around that

injunction, Verizon bears the responsibility. This Court should not reward Verizon for its own failure to mitigate the consequences of its infringement.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, ActiveVideo respectfully requests that the Court grant ActiveVideo's motion for a permanent injunction ordering Verizon to cease and desist from further infringement of ActiveVideo's patents.

Dated:  August 12, 2011                    Respectfully submitted,

                                          */s/ Stephen E. Noona*
                                          Stephen E. Noona
                                          (Virginia State Bar No. 25367)
                                          **KAUFMAN & CANOLES, P.C.**
                                          150 W. Main Street, Suite 2100
                                          Norfolk, VA 23510
                                          Telephone : (757) 624-3000
                                          Facsimile: (757) 624-3169
                                          senoona@kaufcan.com

                                          Nathan W. McCutcheon
                                          (Virginia State Bar No. 36308)
                                          David M. Morris
                                          (Virginia State Bar No. 30146)
                                          **MORGAN, LEWIS & BOCKIUS LLP**
                                          1111 Pennsylvania Avenue, NW
                                          Washington, DC 20004
                                          Telephone: (202) 739-3000
                                          Facsimile: (202) 739-3001
                                          nmccutcheon@morganlewis.com
                                          dmorris@morganlewis.com

---

Verizon claims that it could deploy. As ActiveVideo's expert, Dr. Schonfeld, testified at trial, Verizon's expert did not provide enough information about its proposed alternative system to even assess whether it infringed. Trial Tr. 2299:15-2302:7.

Daniel Johnson, Jr.
Michael J. Lyons
Dion M. Bregman
Ahren C. Hoffman
**MORGAN, LEWIS & BOCKIUS, LLP**
2 Palo Alto Square
3000 El Camino Real, Suite 700
Palo Alto, CA 94306-2122
Telephone: (650) 843-4000
Facsimile: (650) 843-4001
djjohnson@morganlewis.com
mlyons@morganlewis.com
dbregman@morganlewis.com
ahoffman@morganlewis.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I herby certify that on August 12, 2011, I will electronically file the foregoing with the

Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF)

to the following:

Gregory N. Stillman
(Virginia State Bar No. 14308)
Brent L. VanNorman
(Virginia State Bar No. 45956)
**HUNTON & WILLIAMS, LLP**
500 E. Main Street, Suite 1000
Norfolk, VA 23514
Telephone: (757) 640-5314
Facsimile: (757) 625-7720
gstillman@hunton.com
bvannorman@hunton.com

Brian M. Buroker
(Virginia State Bar No. 39581)
Bradley T. Lennie
Justin T. Arbes
**HUNTON & WILLIAMS, LLP**
1900 K Street, NW
Washington, DC 20006
Telephone: (202) 955-1500
Facsimile: (202) 778-2201
bburoker@hunton.com
blennie@hunton.com
jarbes@hunton.com

Henry B. Gutman
Lisa H. Rubin
**SIMPSON THACHER & BARTLETT LLP**
425 Lexington Avenue
New York, New York  10017
Phone:  (212) 455-2000
Fax: (212) 455-2502
hgutman@stblaw.com
lrubin@stblaw.com

*Counsel for Defendants*

                                   /s/ Stephen E. Noona
                                   Stephen E. Noona
                                   (Virginia State Bar No. 25367)
                                   **KAUFMAN & CANOLES, P.C.**
                                   150 W. Main Street, Suite 2100
                                   Norfolk, VA 23510
                                   Telephone: (757) 624-3000

Facsimile: (757) 624-3169
senoona@kaufcan.com