

FILED

AUG 1 7 2011

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**ACTIVEVIDEO NETWORKS, INC.,**

**Plaintiff,**

**v.**

**VERIZON COMMUNICATIONS, INC.,
VERIZON SERVICES CORP.,
VERIZON VIRGINIA INC., and
VERIZON SOUTH INC.**

**Defendants.**

**CIVIL ACTION NO. 2:10cv248**

### *MEMORANDUM OPINION AND ORDER*

Before the Court are Plaintiff's, ActiveVideo Networks, Inc. ("ActiveVideo"), Motion for

Judgment as a Matter of Law Regarding Validity of ActiveVideo's Asserted Patents, pursuant to

Federal Rule of Civil Procedure 50(a), and Defendants', Verizon Communications Inc., Verizon

Services Corp., Verizon Virginia Inc., and Verizon South Inc. (collectively, "Verizon"), Motion

for Judgment as a Matter of Law on Invalidity relating to ActiveVideo's asserted patents and

Motion for Judgment as a Matter of Law Regarding Date of Invention, both pursuant to Federal

Rule of Civil Procedure 50(a).  Having carefully reviewed the Parties' pleadings, the Court ruled

from the bench regarding Plaintiff's and Defendants' respective Motions on July 29, 2011.  The

reasons for the Court's rulings are set forth more fully below.  For the reasons stated herein,

Plaintiff's  Motion for Judgment as a Matter of Law Regarding Validity of ActiveVideo's

Asserted Patents is **GRANTED**.  Consequently, Defendants' Motion for Judgment as a Matter of

1

Law on Invalidity is **DENIED** and Defendants' Motion for Judgment as a Matter of Law
Regarding Date of Invention is rendered **MOOT**.

## I. FACTUAL AND PROCEDURAL HISTORY

On May 27, 2010, Plaintiff ActiveVideo, filed suit in the United States District Court for
the Eastern District of Virginia against Verizon alleging patent infringement and seeking to
enjoin Verizon from infringing certain patents that ActiveVideo owns and to recover monetary
damages for previous infringement.  On December 2, 2010, Verizon filed an Answer to
ActiveVideo's First Amended Complaint and First Amended Counterclaims against
ActiveVideo, seeking, *inter alia*, declaratory judgments of non-infringement and invalidity of
ActiveVideo's asserted patents and alleging ActiveVideo's infringement of several patents
owned by Verizon.  In response, ActiveVideo filed an Answer to Defendant's First Amended
Counterclaims and ActiveVideo's First Amended Counterclaims on December 16, 2010 alleging
invalidity and non-infringement of the patents that Verizon asserted against it.

On July 12, 2011, a jury trial was held in the United States District Court for the Eastern
District of Virginia on ActiveVideo and Verizon's claims of infringement and invalidity.  During
the trial, ActiveVideo asserted infringement of four of its patents: United States Patent Nos.
5,550,578 (the "'578 patent"), 6,100,883 (the "'883 patent"), 6,034,678 (the "'678 patent"), and
6,205,582 (the "'582 patent").  Similarly, Verizon asserted infringement of two of its patents:
United States Patent Nos. 6,169,542 (the "'542 patent") and 7,561,214 (the "'214 patent").
During the course of the trial, Verizon presented evidence, through the expert testimony of Mr.
Christopher M. Schmandt, that each of the asserted claims of ActiveVideo's patents were invalid
as either anticipated by or rendered obvious in light of the prior art.

2

Verizon filed the instant Motion for Judgment as a Matter of Law Regarding Date of Invention at the close of ActiveVideo's case-in-chief on July 19, 2011. ActiveVideo filed a Memorandum in Opposition to Defendants' Motion on July 20, 2011 and the Court deferred ruling on Verizon's Motion on July 21, 2011. On July 26, 2011, following presentation of Verizon's affirmative defenses, ActiveVideo filed the instant Motion for Judgment as a Matter of Law Regarding Validity of ActiveVideo's Asserted Patents. Verizon filed a Memorandum in Opposition to the Motion on July 27, 2011. Pursuant to the Court's directive, ActiveVideo filed a Supplemental Memorandum in Support of its Motion, which was countered by Verizon's Response in Opposition to ActiveVideo's Supplemental Memorandum, both of which were filed on July 28, 2011. On that same date, Verizon renewed its Motion for Judgment as a Matter of Law Regarding Date of Invention. Verizon also filed its own Motion for Judgment as a Matter of Law on Invalidity on July 28, 2011, which was opposed by ActiveVideo on July 29, 2011. On July 29, 2011, after thoroughly reviewing the Parties' pleadings on Plaintiff's and Defendants' pending motions, the Court granted ActiveVideo's Motion for Judgment as a Matter of Law Regarding Validity of ActiveVideo's Asserted Patents and denied Verizon's Motion for Judgment as a Matter of Law on Invalidity, rendering Verizon's Motion for Judgment as a Matter of Law Regarding Date of Invention moot.

## II. LEGAL STANDARDS

### A.     Judgment as a Matter of Law

A district court may grant a motion for judgment as a matter of law if the nonmoving party has been fully heard on an issue and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue. *See* Fed. R. Civ. P. 50(a);

*see also Wheatley v. Wicomico Cnty., Md.*, 390 F.3d 328, 332 (4th Cir. 2004) ("Such a motion

[for judgment as a matter of law] is properly granted 'if the nonmoving party failed to make a

showing on an essential element of his case with respect to which he had the burden of proof.'"

(quoting *Singer v. Dungan*, 45 F.3d 823, 827 (4th Cir. 1995))).  In considering a motion for

judgment as a matter of law, the court must "view the evidence in the light most favorable to . . .

the nonmovant, and draw all reasonable inferences in his favor without weighing the evidence or

the witnesses' credibility." *Baynard v. Malone*, 268 F.3d 228, 234-35 (4th Cir. 2001).  However,

"[t]he party bearing the burden of proof must produce genuine evidence that creates a fair doubt;

'wholly speculative assertions will not suffice.'" *Bongam v. Action Toyota, Inc.*, 14 Fed. App'x

275, 280 (4th Cir. 2001) (citation omitted); *see also Price v. City of Charlotte, N.C.*, 93 F.3d

1241, 1249 (4th Cir. 1996) ("The movant is entitled to judgment as a matter of law 'if the

nonmoving party failed to make a showing on an essential element of his case with respect to

which he had the burden of proof.'" (citation omitted)).

## B.    Anticipation

An accused infringer challenging the validity of a patent claim must prove anticipation by

clear and convincing evidence. *See Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed.

Cir. 2001).  An invention is anticipated under 35 U.S.C. § 102 where, *inter alia*, it was "known

or used by others in this country, or patented or described in a printed publication in this or a

foreign country, before the invention thereof by the applicant for patent," § 102(a), or it was

described in "an application for patent, published under section 122 (b), by another filed in the

United States before the invention by the applicant for patent" or "a patent granted on an

application for patent by another filed in the United States before the invention by the applicant

4

for patent," § 102(e). However, "[t]o be anticipating, a prior art reference must disclose 'each and every limitation of the claimed invention[,] ... must be enabling[,] and [must] describe ... [the] claimed invention sufficiently to have placed it in possession of a person of ordinary skill in the field of the invention.'" *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000) (internal citations omitted).

### C.    Obviousness

Even where an invention has not been identically disclosed in one prior art reference as required for anticipation, the patent may nevertheless be rendered invalid where "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). "Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined." *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966). "Obviousness under 35 U.S.C.A. § 103(a) is ultimately a legal question, based on underlying factual determinations," *Eisai Co. Ltd. v. Dr. Reddy's Labs., Ltd.*, 533 F.3d 1353, 1356 (Fed. Cir. 2008), and the party seeking to invalidate a patent for obviousness, bears the burden of showing that the prior art would have rendered the invention obvious to one of ordinary skill in the art by clear and convincing evidence, *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1187 (Fed. Cir. 2002).

5

## III. DISCUSSION

In its Motion for Judgment as a Matter of Law Regarding Validity of ActiveVideo's Asserted Patents, ActiveVideo first argues that Verizon failed to prove by clear and convincing evidence that ActiveVideo's asserted patents are invalid. Specifically, ActiveVideo argues that Verizon's invalidity expert, Mr. Schmandt applied the preponderance of the evidence standard when assessing invalidity, rather than the heightened clear and convincing standard. Furthermore, ActiveVideo alleges that Mr. Schmandt failed to establish the presence of each and every element of the asserted claims in Verizon's prior art references as required to prove anticipation and failed to sufficiently opine on why combining certain prior art references would have been obvious to one of ordinary skill in the art.

The Court first addresses ActiveVideo's concerns regarding Mr. Schmandt's application of the incorrect legal standard in assessing validity. The Court finds that Mr. Schmandt's alleged failure to apply the clear and convincing evidentiary standard does not render his testimony inadmissible. It is the province of the jury to determine whether the proponent of the expert testimony has met its burden based upon the requisite evidentiary standard and the jury will be so instructed at the close of the evidence. *See Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1574 n.17 (Fed. Cir. 1993) (noting that an expert's opinion on an ultimate legal conclusion is not substantive evidence). Accordingly, the Court declines to grant ActiveVideo's Motion on this ground, as it goes to the weight rather than the admissibility of Mr. Schmandt's testimony.

The Court now turns to the sufficiency of Mr. Schmandt's substantive invalidity analysis with respect to each of the asserted claims. In concluding that each of the asserted claims of ActiveVideo's patents is anticipated by and/or rendered obvious in light of prior art, Mr.

6

Schmandt considered six prior art references: (1) a 1986 article entitled "Single Mode Fiber Transport and Coaxial Distribution of Video on Demand," authored by C.W. Lundgren & P.K. Venkatsesan (the "Bellcore VOD Article"); (2) U.S. Patent No. 4,616,263 titled "Video Subsystem for a Hybrid Videotex Facility" (the "GTE VOD Patent"), which was filed on February 11, 1985; (3) a 1991 article entitled "A Store-and-Forward Architecture for Video-on-Demand Service," authored by A.D. Gelman et al. (the "Bellcore Fiber VOD Article"); (4) an interactive television system deployed from 1987 to 1989 (the "Telaction System"); (5) U.S. Patent No. 5,481,542 titled "Interactive Information Services Control System" (the "Scientific-Atlanta Patent"), which was filed on November 10, 1993; and (6) U.S. Patent No. 5,850,218 titled "Inter-Active Program Guide With Default Selection Control" (the "Time Warner Patent"), which was filed on February 19, 1997.

The Court will first address the sufficiency of Verizon's evidence of anticipation with respect to each asserted claim. The Court will then turn to ActiveVideo's allegations that Verizon's expert, Mr. Schmandt, failed to provide sufficient testimony that certain prior art renders several of ActiveVideo's asserted claims obvious.

## A.    Anticipation of ActiveVideo's Asserted Claims

### 1.    Claim 9 of the '578 Patent

Claim 9 of the '578 Patent, which is dependent on Claim 8, claims an interactive television system comprising, *inter alia*, "a plurality of interactive controllers, disposed at the headend, each interactive controller . . . in assignable television communication over the network with an assigned home interface controller." In conducting his anticipation analysis of Claim 9 of the '578 Patent, Mr. Schmandt opined that the above-mentioned element of the claim was

7

satisfied by the Bellcore VOD Article, by identifying as the "interactive controller," the tape

player whose "output is a video signal in television communication." Trial Tr. 1625, July 21,

2011. However, lacking in Mr. Schmandt's analysis was any explanation or mention of how the

tape recorder provides "*assignable* television communication," meaning that the television

information signal is capable of being assigned to a given home interface controller.

Whether the term "assignable television communication" required the television

information signal to be dedicated to a particular home interface controller was a source of

dispute during the claims construction phase of this case. The Court resolved the dispute by

looking to the plain and ordinary meaning of the term "assignable" to determine that the

television information signal was not required to be dedicated to any given home interface

controller, but rather could be assigned as needed. *See ActiveVideo Networks, Inc. v. Verizon*

*Commc'ns Inc.*, No. 2:10cv248, 2011 WL 3251499, at *14 (E.D. Va. Apr. 7, 2011). Mr.

Schmandt failed to explain how the tape recorder described in the Bellcore VOD Article

provided not only television communication to the home interface controller, but television

communication that was "assignable" as required by the claim language. Without this detailed

explanation, Mr. Schmandt's testimony amounts to a conclusory opinion, which is insufficient to

establish anticipation. *See Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315–16 (Fed.

Cir. 2002) ("Evidence of invalidity must be clear as well as convincing. Typically, testimony

concerning anticipation must be testimony from one skilled in the art and must identify each

claim element, state the witnesses' interpretation of the claim element, and explain in detail how

each claim element is disclosed in the prior art reference. The testimony is insufficient if it is

merely conclusory."). Accordingly, the Court finds that Mr. Schmandt failed to establish that

each and every element of Claim 9 of the '578 Patent is disclosed within the Bellcore VOD Article.

In addition to analyzing the Bellcore VOD Article and concluding that it anticipated Claim 9 of the '578 Patent, Mr. Schmandt also analyzed the GTE VOD Patent, concluding that it too anticipated Claim 9 of the '578 Patent. Given that the patent office considered the GTE VOD Patent during prosecution of the '578 Patent, Verizon bears an even heavier burden to establish invalidity of the asserted claims of the '578 Patent based upon the GTE VOD Patent. *See Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1467 (Fed. Cir. 1990) ("This burden [of proving invalidity] is especially difficult when the prior art was before the PTO examiner during prosecution of the application."); *see also Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563, 1569 (Fed. Cir. 1996) ("When a patent has been examined and duly granted, judicial review must give due weight to the presumption of validity. The presumption of validity is based on the presumption of administrative correctness of actions of the agency charged with examination of patentability." (citations omitted)).

During his analysis of the GTE VOD Patent, Mr. Schmandt identified as the "interactive controllers," the video cluster controller depicted in the GTE VOD Patent. Figure 2 of the GTE VOD Patent, which Mr. Schmandt relied upon for his analysis, depicts the video control cluster connecting the video disk unit (which Mr. Schmandt equated to the information source means) to the IEEE 488 Bus. However, as with the tape recorder in the Bellcore VOD Article, Mr. Schmandt never offered an opinion or any analysis as to how the video control cluster is in "assignable television communication" with an assigned home interface controller. In fact, Mr. Schmandt never discussed how the video cluster controller interacts with a given home interface

9

controller at all during his testimony. *See* Trial Tr. 1659-60, July 21, 2011. As with his analysis of the Bellcore VOD Article, Mr. Schmandt again failed to demonstrate that each and every element of Claim 9 of the '578 Patent was disclosed in the GTE VOD Patent by clear and convincing evidence.

Finally, Mr. Schmandt formulated the opinion that Claim 9 of the '578 Patent is also anticipated by the Bellcore Fiber VOD Article. During Mr. Schmandt's brief analysis of the Bellcore Fiber VOD Article, he stated that the Bellcore Fiber VOD Article discloses a "home interface controller," which he identifies as the "customer premise equipment" disclosed in the Article, and "a plurality of processors." *See* Trial Tr. 1687-88, July 22, 2011. In describing how the reference discloses "a plurality of processors," Mr. Schmandt reasoned that the information warehouse described in the Bellcore Fiber VOD Article must be capable of playing multiple movies at once. *See* Trial Tr. 1688, July 22, 2011. However, the mere fact that the information warehouse must be capable of playing multiple movies, does not indicate the presence of processors or controllers which are individually assignable to requesting home interface controllers as required by Claim 9 of the '578 Patent. Thus, Mr. Schmandt's brief analysis of the Bellcore Fiber VOD Article does not provide sufficient evidence to establish that Claim 9 of the '578 Patent is anticipated by the Bellcore Fiber VOD Article. Accordingly, the Court finds that Mr. Schmandt failed to explain, in detail, how each and every element of Claim 9 of the '578 Patent is disclosed in the Bellcore VOD Article, the GTE VOD Patent, or the Bellcore Fiber VOD Article. Thus, Verizon has not presented sufficient evidence from which a reasonable jury could conclude that Claim 9 of the '578 Patent is anticipated.

## 2.    Claim 1 of the '883 Patent

Claim 1 of the '883 Patent claims, in relevant part, "[a] method for providing interactive

service . . ., said method comprising: . . . controlling at a processor in the node, in response to

detection of the request, an interactive session with the requesting home interface controller;

providing an information signal capable of full motion video responsive to the interactive session

through the information service distribution network to the subscriber television set . . .; and

receiving data communications at the processor from the requesting home interface controller

during the interactive session representative of commands interactive with the image on the

associated subscriber television set." The steps disclosed in Claim 1 of the '883 Patent

essentially describe the establishment of an "interactive session" through which information

services are provided to the subscriber. The Court previously defined the term "interactive

session" to mean a "two-way communication session between devices in a network that is

established on a demand basis." *See ActiveVideo Networks*, 2011 WL 3251499, at *16. Viewing

the claims in light of the specification, the Court finds that the presence of an "interactive

session" is critical to the novelty of the invention described in the '883 Patent and related patents.

In concluding that Claim 1 of the '883 Patent is invalid, Mr. Schmandt first analyzed the

Bellcore VOD Article. During his testimony on the Bellcore VOD Article, Mr. Schmandt

described how the "central control unit" disclosed in the Bellcore VOD Article receives a request

from a subscriber, how the subscriber is then provided with the video by tuning to the particular

channel displayed on the television screen, and how the subscriber is able to control the image on

his or her television screen. *See* Trial Tr. 1631-32, July 21, 2011. However, noticeably absent

from Mr. Schmandt's analysis is any mention of how a two-way communication session is

11

established on a demand basis in the Bellcore VOD Article. The term "session" implies more than just a single request and response, but rather connotes a period of time during which the subscriber may receive various information services as described by the language of the claim. *See* '883 patent col. 19 ll.56-64 26 (filed Jun. 4, 1996). Mr. Schmandt does not point to anything within the prior art reference that discloses a session in which full motion video can be provided to the subscriber as requested. The presence of the interactive session is a critical element in the patent and was one of the primary bases upon which the applicant distinguished his invention from other prior art during patent prosecution. *See ActiveVideo Networks*, 2011 WL 3251499, at *15 (describing how the applicant distinguished certain prior art references based upon the fact that the prior art reference failed to disclose establishing an interactive session). Accordingly, because the Court finds that Mr. Schmandt failed to explain how an "interactive session" was disclosed in the Bellcore VOD Article and the presence of an interactive session was a critical element of the patented invention, the Court finds that Verizon has not introduced substantial evidence upon which a reasonable jury could conclude that the Bellcore VOD Article discloses each and every element of Claim 1 of the '883 Patent.

Mr. Schmandt also opined that Claim 1 of the '883 Patent was anticipated by the GTE VOD Patent, which was cited to the patent examiner during prosecution of the '883 Patent. *See Abbott Labs. v. Syntron Bioresearch, Inc.*, 334 F.3d 1343, 1357 (Fed. Cir. 2003) ("The presumption of validity remains the same whether or not the art relied upon at trial was before the examiner. However, the fact that a skilled examiner passed upon that very reference during prosecution may be a factor in determining whether the challenger has met the clear and convincing evidence burden."). Again, Mr. Schmandt's analysis fails to meet the clear and

convincing standard for proving anticipation.  Specifically, Mr. Schmandt failed to provide a detailed explanation for how the element of "receiving data communications at the processor . . . during the interactive session representative of commands interactive with the image on the associated subscriber television set" is disclosed in the GTE VOD Patent.  Mr. Schmandt merely articulated that the user can send a request for video, but not that the user can alter the video that is displayed based on what he or she is viewing (i.e. rewind, fast forward, pause, etc.).  *See* Trial Tr. 1669, July 22, 2011.  Thus, Mr. Schmandt's analysis of the GTE VOD Patent fails to establish that Claim 1 of the '883 Patent is anticipated by the GTE VOD Patent.

Finally, Mr. Schmandt turns to the Bellcore Fiber VOD Article and concludes that it discloses each and every element of Claim 1 of the '883 Patent.  However, during his analysis Mr. Schmandt failed to even identify, let alone describe in detail, several elements of the claim, including the interactive session and the step of "receiving data communications at the processor from the requesting home interface controller during the interactive session."  Accordingly, Mr. Schmandt's conclusory opinion that Claim 1 of the '883 Patent is anticipated by the Bellcore Fiber VOD Article is wholly lacking in evidentiary support and the issue should not reach the jury.  Because Mr. Schmandt's analyses of the Bellcore VOD Article, GTE VOD Patent, and Bellcore Fiber VOD Article each failed to establish anticipation by clear and convincing evidence, the Court declines to send the issue of anticipation of Claim 1 of the '883 Patent to the jury.

### 3.    Claim 26 of the '883 Patent

Claim 26 of the '883 Patent, which is dependent on Claims 24 and 25, claims, in relevant part, an "interactive television information system . . . wherein said processor is one of a plurality

13

of processors, each processor being an assignable module to one of said home interface

controllers in interactive mode . . . further comprising a network manager for assigning an

available one of said processors to furnish interactive service to one of said home interface

controllers in interactive mode based on data obtained from the data communication path so that

assignment of processors to home interface controllers is accomplished on a demand basis."

Among other things, Claim 26 requires processors which can be assigned on a demand basis to a

home interface controller based on the subscriber's request. As explained in the discussion of

Claim 9 of the '578 Patent, the processors are assignable, meaning they are capable of being

assigned but are not specifically dedicated to a requesting home interface controller. Although in

his invalidity analysis, Mr. Schmandt identified the 16 tape recorders mentioned in the Bellcore

VOD Article as the processors described in Claim 26 of the '883 Patent, Mr. Schmandt failed to

describe how the Bellcore VOD Article discloses processors which are assignable on a demand

basis.

Furthermore, Mr. Schmandt equated the "microprocessor control" mentioned in the

Bellcore VOD Article with the "network manager" described in Claim 26, but fails to point to

any specific evidence within the article that indicates that the microprocessor control is used to

assign the tape recorders, which he argues are the processors as described in the patent, on a

demand basis to the home interface controller. Mr. Schmandt's conclusory statements about the

role and function of the microprocessor control alone are not sufficient to satisfy the clear and

convincing evidentiary burden. Accordingly, and as with Claim 9 of the '578 Patent, the Court

finds that Mr. Schmandt failed to describe in detail how the Bellcore VOD Article discloses

processors which are capable of being assigned on a demand basis to the home interface

14

controller.

Mr. Schmandt also offered an opinion that Claim 26 of the '883 Patent is anticipated by the GTE VOD Patent. As was the case with his discussion of the Bellcore VOD Article, Mr. Schmandt fails to provide any discussion on how the processors, which he equates to the video cluster controllers in the GTE VOD Patent, are an "assignable module" to the home interface controllers or how the network manager, which he states is the video control unit in the GTE VOD Patent, assigns the processors to a home interface controller "on a demand basis." Mr. Schmandt only states that the video cluster controllers "control the video disks," but does not offer any opinion on their functionality with respect to the home interface controllers. *See* Trial Tr. 1671, July 22, 2011. Additionally, Mr. Schmandt offers a conclusory statement about the function of the video control unit, but does not point to any evidence in the GTE VOD Patent which supports his conclusion. *See* Trial Tr. 1671, July 22, 2011 ("The network manager is the video control unit. When a request comes in from the user, it's the job of the network manager -- it's the job of the video control unit to figure out which of the video cluster controllers is going to get that request."). The GTE VOD Patent, itself, states only that the video control unit determines the storage location of various video segments and activates the video cluster controllers, but does not disclose assignment of the video cluster controllers to the home interface controller on a demand basis. Thus, Mr. Schmandt fails to establish that each and every element of Claim 26 of the '883 Patent is disclosed in the GTE VOD Article.

Furthermore, similar to his analysis of Claim 1 of the '883 Patent, Mr. Schmandt's invalidity analysis of Claim 26 with respect to the Bellcore Fiber VOD Article is substantially deficient. Again, Mr. Schmandt failed to even identify several of the critical elements of the

15

claim, including the use of an "interactive mode," the step in which "the content of the information signal is modified in response to control data," the fact that each processor is an "assignable module," the "network manager," and assignment "on a demand basis." Thus, the Court finds that Mr. Schmandt has not provided sufficient evidence upon which to submit the issue of anticipation of Claim 26 of the '883 Patent by the Bellcore VOD Article, the GTE VOD Patent, or the Bellcore Fiber VOD Article to the jury.

### 4.   Claims 1 and 2 of the '678 Patent

Claim 1 of the '678 Patent claims, in relevant part, "[a] method for interactive delivery of information services to subscriber televisions over a cable distribution network comprising the steps of: receiving at a node over a data communication link a request for an interactive session from a home interface controller associated with a subscriber television; assigning one of a plurality of television information signals . . . receiving at the node over the data communication link a request for an information service from the home interface controller . . ." Claim 2 depends on Claim 1, but adds the additional element of "assigning one of a plurality of multimedia processing means to control the step of putting and to communicate with the requesting home interface controller."

Providing his opinion on how the Bellcore VOD Article anticipates Claims 1 and 2 of the '678 Patent, Mr. Schmandt described how the node receives a request for a movie from the subscriber and how the subscriber uses a keypad to indicate the number of the movie that he or she wishes to watch. *See* Trial Tr. 1639, 1641, July 21, 2011. However, Mr. Schmandt again failed to describe in detail how the process of requesting an interactive session and then later requesting a specified information service is disclosed in the Bellcore VOD Article. Mr.

16

Schmandt merely discusses the request for the movie or program itself, without any detailed discussion on how an interactive session is established. In fact the Bellcore VOD Article describes a system in which either the subscriber's selected program plays instantly, if available locally, or the selected program is retrieved from the video source library and then sent immediately to the subscriber. The Article does not disclose the use of an interactive session and Mr. Schmandt did not offer a detailed opinion on how this element of the claim is satisfied in the Bellcore VOD Article. As with Claim 1 of the '883 Patent, this failure is fatal to Mr. Schmandt's invalidity analysis of Claims 1 and 2 of the '678 Patent.

Furthermore, with respect to the element of Claim 2 which requires "assigning one of a plurality of multimedia processing means," Mr. Schmandt again failed to sufficiently opine on how the "microprocessor control" mentioned in the Bellcore VOD Article performs this step, but rather states in a conclusory manner that the "microprocessor control" chooses "which multimedia processing means, i.e. which of the videotape recorders, should be the one to play the tape," without providing any specific detail on how this step is accomplished or where in the Article this step is disclosed. Trial Tr. 1642, July 21, 2011. Mr. Schmandt's conclusory opinions are insufficient to establish anticipation by clear and convincing evidence. Accordingly, the Court finds that Mr. Schmandt's invalidity analysis of the Bellcore VOD Article is insufficient as to Claims 1 and 2 of the '678 Patent.

Considering the GTE VOD Patent, Mr. Schmandt also found Claims 1 and 2 of the '678 Patent to be anticipated. With respect to Claim 1, Mr. Schmandt pointed out each of the elements of the claim; however, he failed to establish that the elements of the claim were arranged in the same manner in the GTE VOD Patent as in Claim 1 of the '678 Patent. *See*

*Richardson v. Suzuki Motor Co., Ltd.*, 868 F.2d 1226, 1236 (Fed. Cir. 1989) ("Every element of

the claimed invention must be literally present, *arranged as in the claim*." (emphasis added)).

Mr. Schmandt provided testimony that the steps of "assigning one of a plurality of television

information signals " and "informing the requesting home interface controller of the assigned

television information signal" are satisfied when a data message is displayed on the subscriber's

television indicating the time and channel of the broadcast. *See* Trial Tr. 1673, July 22, 2011.

However, in the GTE VOD Patent, both of these steps occur *after* the subscriber sends a request

for an information service, rather than before, as required by Claim 1 of the '678 Patent.

Accordingly, Mr. Schmandt failed to demonstrate that the GTE VOD Patent contains all of the

limitations of Claim 1 of the '678 Patent "arranged as in the claim," and thus he also failed to

provide sufficient evidence from which a jury could conclude that the GTE VOD Patent

anticipates Claim 1 of the '678 Patent. *See Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359,

1371 (Fed. Cir. 2008) ("We thus hold that unless a reference discloses within the four corners of

the document not only all of the limitations claimed but also all of the limitations arranged or

combined in the same way as recited in the claim, it cannot be said to prove prior invention of the

thing claimed and, thus, cannot anticipate under 35 U.S.C. § 102."). Similarly, as Claim 2 of the

'678 Patent depends on Claim 1, Mr. Schmandt also failed to provide sufficient evidence to show

that Claim 2 is anticipated by the GTE VOD Patent.

    Finally, Mr. Schmandt opined that Claims 1 and 2 of the '678 Patent were obvious based

upon the Bellcore Fiber VOD Article because the step of "informing the requesting home

interface controller of the assigned television information signal" would have been obvious

because the equipment would inherently have to be capable of detecting the video in order to

18

display it on the subscriber's screen. *See* Trial Tr. 1690, July 22, 2011. Without reaching the merits of Mr. Schmandt's obviousness analysis, the Court finds his analysis deficient for the same reasons as articulated above with respect to anticipation of Claims 1 and 26 of the '883 Patent by the Bellcore Fiber VOD Article. Mr. Schmandt failed to identify or discuss several key elements of Claims 1 and 2 of the '678 Patent in the Bellcore Fiber VOD Article, including the existence of an "interactive session" separate and apart from the request for an information service, and the step of "assigning one of a plurality of multimedia processing means." Thus, Mr. Schmandt's conclusion that Claims 1 and 2 of the '678 Patent are obvious based on the Bellcore Fiber VOD Article lack sufficient evidentiary support. *See Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1085 (Fed. Cir. 2008) ("The determination of obviousness is made with respect to the subject matter as a whole, not separate pieces of the claim."); *Gillette Co. v. S.C. Johnson & Son, Inc.*, 919 F.2d 720, 724 (Fed. Cir. 1990) ("Focusing on the obviousness of substitution and differences, instead of on the invention as a whole, is a legally improper way to simplify the often difficult determination of obviousness."). Thus, the Court finds that neither Mr. Schmandt's opinion that the Bellcore VOD Article and the GTE VOD Patent anticipate Claims 1 and 2 of the '678 Patent nor his opinion that the Bellcore Fiber VOD Article renders Claims 1 and 2 of the '678 Patent obvious are supported by substantial evidence. Therefore, the Court declines to submit the issue of validity of Claims 1 and 2 of the '678 Patent to the jury.

### 5.    Claims 5, 7 and 8 of the '582 Patent

Claim 5 of the '582 Patent claims, in relevant part, "[a]n interactive cable system comprising: . . . a plurality of individually assignable processors, disposed at the headend, in assignable data communication with an assigned home interface controller . . . and a frame server

19

in communication with a plurality of home interface controllers each assigned to one of a

plurality of processes running in said frame server for interactive service, said processes

receiving data communications from the subscribers associated with their respective assigned

home interface controllers, said frame server generating interactive pages responsive to the data

communications and supplying the interactive pages to the subscriber televisions associated with

the assigned home interface controllers in digitally encoded television signals over the

information service distribution network." Claim 7 depends on Claim 5, adding the additional

element "wherein said information service distribution network comprises a plurality of cables

each serving a different service area and wherein the interactive cable system further comprises a

switch for directing each television signal from one of said plurality of individually assignable

processors to the cable serving the service area in which the respective assigned home interface

controller is served." Likewise, Claim 8 depends on Claim 7, but adds the requirement of "a

common channel transmitted throughout said information service distribution network for

carrying the digitally encoded television signals from said frame server."

Mr. Schmandt's invalidity analysis of Claims 5, 7, and 8 of the '582 Patent with respect

to the Bellcore VOD Article fails for several reasons. As previously discussed, Mr. Schmandt

fails to explain how the Bellcore VOD Article discloses processors which are individually

assignable to a requesting home interface controller, but merely identifies the tape recorders as

the processors described in the patent, without expanding on how each tape recorder is assigned

to a home interface controller on a demand basis. *See* Trial Tr. 1644, July 21, 2011.

Furthermore, Mr. Schmandt failed to provide a detailed explanation for how the frame server

element is satisfied in the Bellcore VOD Article. Mr. Schmandt does not identify what

20

equipment or structure in the Bellcore VOD Article is the same as the frame server disclosed in the '582 Patent. Rather, Mr. Schmandt's testimony was limited to describing how the system disclosed in the Bellcore VOD Article provides a message to the user when all video recorders are busy and the user is unable to view the movie or program requested instantaneously. *See* Trial Tr. 1646, July 21, 2011. Although Mr. Schmandt speculates that the system described in the Bellcore VOD Article could also provide menus for user selection, he did not point to anything within the reference on which this opinion is based. Furthermore, Mr. Schmandt failed to identify any structure that performs the required tasks of the frame server, namely, that the frame server generate interactive pages responsive to data communications from subscribers and supply the interactive pages to the subscriber in digitally encoded television signals.

As to the additional limitation of Claim 7, the Court finds that Mr. Schmandt failed to adequately explain how the Bellcore VOD Article discloses "a plurality of cables each serving a different service area" and "a switch for directing each television signal from one of said plurality of individually assignable processors to the cable serving the service area in which the respective assigned home interface controller is served." Mr. Schmandt admitted that he found the claim "a little bit confusing" and then proceeding to speculate as to how these respective elements were included within the Bellcore VOD Article. *See* Trial Tr. 1648, July 21, 2011. The switch that Mr. Schmandt identified in the Bellcore VOD Article did not direct television signals to a specific cable in order to provide service to a particular service area, but rather switched the signal to different modulators to come out on different channels. Mr. Schmandt also failed to discuss how cables were used in the Bellcore VOD Article to provide services to different service areas. Rather than point to where in the reference this element could be found, Mr. Schmandt

21

generally opined that "in any cable television system it's going to have cables going into different service areas." Trial Tr. 1648, July 21, 2011. Mr. Schmandt's speculative and general descriptions are not sufficient to meet the clear and convincing evidentiary standard to prove anticipation of Claim 7 of the '582 Patent.

Finally, because Claim 8 of the '582 Patent depends on Claim 7, which depends on Claim 5, and Mr. Schmandt's testimony fails to sufficiently describe the required individually assignable processors, frame server, and switch and cable elements described in Claims 5 and 7 of the '582 Patent, Mr. Schmandt has consequently failed to establish that Claim 8 is anticipated, in spite of his opinion that the "common channel" element of Claim 8 is obvious in view of the Scientific-Atlanta Patent. Accordingly, the Court finds that the Bellcore VOD Article neither anticipates nor renders obvious Claim 8 of the '582 Patent.

Mr. Schmandt also concluded that the GTE VOD Patent anticipated Claims 5, 7 and 8 of the '582 Patent. However, similar to his discussion of the Bellcore VOD Article, Mr. Schmandt failed to describe how the "individually assignable processors," which he identifies as the video cluster controllers in the GTE VOD Patent, are in assignable data communication with the home interface controller. *See* Trial Tr. 1677, July 22, 2011. The GTE VOD Article does not discuss whether the processors, or video cluster controllers, are capable of being assigned to different home interface controllers, and Mr. Schmandt offered no opinion on this issue. Further, although Mr. Schmandt stated that the "server processor subsystem" disclosed in the GTE VOD Patent acts as a frame server by sending digital information to the subscriber, he failed to offer any opinion on how the "server processor subsystem" contains a "plurality of processes" which receive data communications from the subscribers, nor how the server processor subsystem

22

generates "interactive pages" responsive to those data communications. *See* Trial Tr. 1677, July 22, 2011. The GTE VOD Patent only specifies that the "server processor subsystem" is responsible for providing the user with the requested information and for storing data received from the information provider, but not that the "server processor subsystem" facilitates user interaction through the use of interactive pages.

Furthermore, in his analysis of Claim 7, Mr. Schmandt again fails to describe how the switch he identifies as the "video switch" in the GTE VOD Patent is used to direct signals from the individually assignable processor to the service area where the assigned home interface controller is located. Rather than explain how the system functions in its entirety, Mr. Schmandt merely separately identifies the cables, the video switch, and the users who are presumably located in different parts of the cable system, without any discussion of the invention as a whole. *See* Trial Tr. 1680-81, July 22, 2011. Thus, Mr. Schmandt's analysis does not constitute substantial evidence upon which the jury could conclude that the elements of Claim 7 of the '582 Patent are fully disclosed in the GTE VOD Patent. Thus, as with the Bellcore VOD Article, the Court finds that Verizon has not submitted sufficient evidence upon which the jury could conclude that the GTE VOD Article anticipates Claims 5, 7, and 8 (which depends on Claim 7) of the '582 Patent.

Mr. Schmandt also analyzed the Bellcore Fiber VOD Article and concluded that the Article anticipated and/or rendered obvious Claims 5, 7, and 8 of the '582 Patent in view of the Scientific-Atlanta Patent. *See* Trial Tr. 1690-91, July 22, 2011. However, Mr. Schmandt's conclusory opinion is insufficient to sustain a finding of obviousness. *See Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 272 F.3d 1335, 1358 (Fed. Cir. 2001), *vacated on other grounds*,

23

538 U.S. 974 (2003) ("In an obviousness determination, some evidentiary support must be offered beyond an expert's conclusory opinion."). Mr. Schmandt did not identify how either the Bellcore Fiber VOD Article or the Scientific-Atlanta Patent disclose the elements of "individually assignable processors" in "assignable data communication with the home interface controller" or a frame server containing "a plurality of processes," that generates "interactive pages" responsive to data communications from subscribers. Mr. Schmandt merely offered the conclusory opinion that if there are a multitude of videos to choose from, there must be a way to generate a menu and the frame server would be a method for doing so. *See* Trial Tr. 1693, July 22, 2011. However, Mr. Schmandt failed to point to any evidentiary support within either prior art reference to support this conclusion. This analysis is insufficient for the purposes of both anticipation and obviousness.

Finally, Mr. Schmandt analyzed the Time Warner Patent and determined that it anticipated Claims 5, 7, and 8 of the '582 Patent. In conducting his analysis, Mr. Schmandt stated that the Time Warner Patent disclosed an information service distribution network, a plurality of home interface controllers, a plurality of subscriber selection devices, a plurality of individually assignable processors, and a frame server. However, in discussing the individually assignable processors, which he identifies as the media servers disclosed in the Time Warner Patent, he again failed to point to any evidence within the reference itself which indicates that these media servers are "in assignable data communication." Mr. Schmandt merely expressed his opinion that the media servers should be individually assigned since they are doing demanding tasks. This opinion, without any supporting evidence in the patent itself, is insufficient to sustain Mr. Schmandt's anticipation conclusions. Furthermore, Mr. Schmandt

24

offered no opinion as to whether the frame server contains "a plurality of processes" that receive data communications from the subscribers. Thus, the Court finds that Mr. Schmandt's analysis of the Time Warner Patent does not constitute sufficient evidence upon which a reasonable jury could conclude that Claims 5, 7, and 8 of the '582 Patent are anticipated by the Time Warner Patent. Accordingly, the Court finds that Verizon failed to present sufficient evidence from which a reasonable jury could find Claims 5, 7, and 8 of the '582 Patent invalid based upon the Bellcore VOD Article, the GTE VOD Patent, the Bellcore Fiber VOD Article, or the Time Warner Patent.

**B.    Obviousness of ActiveVideo's Asserted Claims**

ActiveVideo argues that during his obviousness analysis of the Telaction System, Mr. Schmandt failed to explain how or why the alleged prior art reference should be modified to render the asserted claims of ActiveVideo's patents obvious. During his obviousness analysis of the Telaction system, Mr. Schmandt opined that the Telaction System uses an "interactive session," assignable signals, a headend with multiple processors, and "frame server" that was outside the house, but was the "functional equivalent of a set-top box." Trial Tr. 1697-98, July 22, 2011. After identifying these elements, Mr. Schmandt concluded that Claim 9 of the '578 patent, Claims 1 and 26 of the '883 patent, Claims 1 and 2 of the '678 patent, and Claim 5 of the '582 patent were obvious based on the Telaction System and what would have been known to one of ordinary skill in the art and that Claim 7 of the '582 patent would have been obvious in view of the Time Warner patent, and Claim 8 of the '582 patent would have been obvious in view of the Scientific-Atlanta Patent. Trial Tr. 1698-99, July 22, 2011.

In reaching these conclusions, Mr. Schmandt stated that, although the Telaction System

25

utilized a telephone and frame grabber, it would have been obvious to one of ordinary skill in the art to modify that system to use a home interface controller and a data communications link "because you could then free up the user's telephone." Trial Tr. 1699-1700, July 22, 2011. However, Mr. Schmandt failed to provide any documentary evidence to support this claim. *See Upjohn Co. v. Mova Pharm. Corp.*, 225 F.3d 1306, 1311 (Fed. Cir. 2000) ("At this critical point in the determination of obviousness, there must be factual support for an expert's conclusory opinion."). Similarly, Mr. Schmandt failed to offer any explanation as to why it would be obvious to combine the teachings of the Time Warner or Scientific-Atlanta Patents with the Telaction System, beyond the fact that the system would be more efficient. *See* Trial Tr. 1701, July 22, 2011. Accordingly, the Court finds Mr. Schmandt's testimony insufficient as a matter of law to support a finding of obviousness on any of the asserted claims of ActiveVideo's patents.

## IV. CONCLUSION

The Court finds that Verizon has not presented sufficient evidence to sustain its claims of invalidity on any of ActiveVideo's asserted claims. Accordingly, the Court declines to tender the issue of invalidity of ActiveVideo's asserted claims to the jury. For the foregoing reasons, Plaintiff's Motion for Judgment as a Matter of Law Regarding Validity of ActiveVideo's Asserted Patents is **GRANTED** and Defendants' Motion for Judgment as a Matter of Law on Invalidity is **DENIED**. Because the Court declines to submit Verizon's invalidity defenses to the jury, it finds no need to assess whether ActiveVideo presented sufficient evidence to entitle it to an earlier date of invention than the respective filing dates for ActiveVideo's asserted patents. Thus, Defendants' Motion for Judgment as a Matter of Law Regarding Date of Invention is **MOOT**.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel and parties of record.

**IT IS SO ORDERED.**

Raymond A. Jackson
**United States District Judge**

Norfolk, Virginia
August 16, 2011
Nunc Pro Tunc
July 29, 2011

27