IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| ACTIVEVIDEO NETWORKS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:10-cv-00248-RAJ-DEM |
| | ) |
| VERIZON COMMUNICATIONS INC., | ) |
| VERIZON SERVICES CORP., | ) PUBLIC VERSION |
| VERIZON VIRGINIA INC., and | ) |
| VERIZON SOUTH INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## VERIZON'S OPPOSITION TO PLAINTIFF'S MOTION FOR AN AWARD OF PREJUDGMENT INTEREST, POST-JUDGMENT INTEREST AND DAMAGES FOR DEFENDANTS' CONTINUING INFRINGEMENT

ActiveVideo's Motion seeks damages it is not entitled to and relief the Court lacks jurisdiction to provide. ActiveVideo's request for an accounting and royalty award for four months prior to the verdict should be denied because it asks the Court to undertake an action that has been expressly rejected by the Federal Circuit, Fourth Circuit, and numerous district courts. ActiveVideo's request for prejudgment interest should be denied because ActiveVideo unreasonably delayed bringing suit. Finally, ActiveVideo's request for confirmation that it is entitled to post-judgment interest should be denied because it seeks an impermissible advisory opinion.

## ARGUMENT

**A.   ActiveVideo's Request For Supplementary Damages Is Barred By Federal Circuit Precedent And Exceeds The Court's Authority Under The Patent Laws And The Constitution**

ActiveVideo asks this Court to enhance the damages award granted by the jury in this case to include damages for the four months prior to the verdict for which ActiveVideo consciously elected to present no evidence of damages at trial. ActiveVideo's sole justification for this request is that, due to the close of discovery, it only had the relevant data through the end of March. *See* Motion at 10. But nothing prevented ActiveVideo from providing the jury a damages projection for the four months leading to trial, just as it did in its Motion. *Id.* ("In particular, Mr. Wagner estimated Verizon's average billable accounts for April 2011 through August 2, 2011 using Defendants' actual subscriber data for prior months."). Long-standing precedent dictates that ActiveVideo cannot remedy its failure to present such evidence to the jury by asking the Court to enhance the jury's award, and numerous district courts have rejected identical requests for the relief ActiveVideo seeks. Further reinforcing the well-settled principle that a jury's damages award cannot be augmented to cover a time prior to the verdict, all of the cases cited by ActiveVideo in its Motion address different factual situations and confirm that an award for enhanced damages is not appropriate in this case.

Foremost, the Court has no statutory authority to increase the damages award. ActiveVideo relies upon 35 U.S.C. § 284 as the basis for its request for adding to the jury's award, but this statute makes clear that damages in a patent case are to be decided *either* by the jury or the court. *See id.* ("When damages are not found by the jury, the court shall assess them."). This is a one-or-the-other proposition. After parsing this statute, the Federal Circuit has held that a district court has authority to enhance a damages award only when the infringement

2

was willful or there was bad faith. *See Beatrice Foods Co. v. New Eng. Printing &*
*Lithographing Co.,* 923 F.2d 1576, 1578 (Fed. Cir. 1991) ("Although the statute does not state
the basis upon which a district court may increase damages, it is well-settled that enhancement of
damages must be premised on willful infringement or bad faith. Furthermore, if a district court
enhances damages, it must explain and articulate through findings the basis upon which it
concludes that that there has been willful infringement or bad faith.") (internal citations omitted).
Because the jury rejected ActiveVideo's willfulness claims in this case, *see* Dkt. No. 927, and
there is no evidence of bad faith, the Court has no authority to grant additional damages for any
time prior to the jury's verdict.

Indeed, ActiveVideo's argument that the Court can increase the jury's damages award to
address some claimed deficiency in the available evidence was expressly rejected by the Federal
Circuit. In *Beatrice Foods,* the Federal Circuit held that "enhanced damages may be awarded
only as a penalty for an infringer's increased culpability, namely willful infringement or bad
faith. Damages cannot be enhanced to award the patentee additional compensation to rectify
what the district court views as an inadequacy in the actual damages awarded." *Id.* at 1579. The
Federal Circuit's conclusion was clear: "The award cannot be enhanced . . . on the ground that it
is inadequate." *Id.*

The situation in *Beatrice Foods* was far more egregious than the run-of-the-mill situation
here. Rather than just having the time for discovery expire, as it did here, the defendant in that
case intentionally destroyed its business records that served as "the only yardstick to measure
accurately defendant's guilt in dollars, thus hindering plaintiff in proving defendant's illegal use
of its [patented invention]." *Id.* at 1577. Nevertheless, the Federal Circuit ruled that the absence

3

of evidence caused by this intentional spoliation was not a sufficient basis to enhance the damage award. As the court held:

> To permit the award of enhanced damages because of perceived inadequacies in the actual damages awarded would be likely to cause patentees generally to seek, and the district courts to award, enhanced damages whenever the infringer's lack or, or deficiencies in, its records make it difficult for the patentee to calculate damages with the desirable degree to precision. We decline thus to upset the basis upon which damages in patent infringement cases traditionally have been awarded.

*Id.* at 1580. Rather than having district courts enhance damage awards, the Federal Circuit ruled that the proper course when information is unavailable is to "resolve all doubts against the infringer and determine damages on the best available evidence." *Id.* at 1579.

District courts faced with identical requests have consistently refused to award additional damages for a time prior to the jury's verdict. In one case directly on-point, the court denied a request for supplemental damages related to a pre-verdict time period where the plaintiff did not present any estimate or projection to the jury. *See Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, No. 08-cv-335, 2010 U.S. Dist. LEXIS 79039, at *6-7 (S.D. Cal. Aug. 5, 2010). The court in *Presidio* noted that the "*jury is presumed to have compensated [the plaintiff] for all of its lost profits leading up to trial.*" *Id.* Importantly, the court noted that the plaintiff "could have – but did not – argue to the jury that its suggested [damages amount] should be proportionally increased for the two months not accounted in the sales data." *Id.* ActiveVideo makes the same argument now, and its failure to introduce any evidence to the jury regarding allegedly infringing "post-discovery" sales should lead to the same result as in *Presidio* – a denial of the requested damages.

Likewise, in *Oscar Mayer Foods Corp. v. Conagra, Inc.* 869 F. Supp. 656, 663-64 (W.D. Wis. 1994), the court denied a request for supplemental damages when the plaintiff offered no

evidence of damages for a time period prior to trial but after the close of fact discovery. The Court noted that the plaintiff "was entitled to establish damages for the entire period or to urge the jury to accept a projection from past sales, but chose not to present such evidence." *Id.* The Court also found that "awarding additional amounts for damages incurred before trial would be an improper invasion of the jury's province to determine actual damages and inappropriate use of 35 U.S.C. § 284 to enhance inadequate compensatory damages." *Id.*

None of the cases cited by ActiveVideo supports its request for an enhancement of the jury award based on FiOS video-on-demand ("VOD") sales for the four months leading up to trial. In fact, the primary case cited by ActiveVideo directly supports Verizon's position. *See TiVo, Inc. v. Echostar Commc'ns. Corp.,* No. 2:04-cv-1, 2006 U.S. Dist. LEXIS 64291 (E.D. Tex. Aug. 17, 2006). The requested "supplemental" damages sought in *TiVo* actually related to sales made *from the time of trial to the point when the court entered a final judgment*, not any time prior to the trial, as here. *Id.* at *3-4. *TiVo* provides an example of the correct procedure for introducing damages evidence to the jury when the most updated financial data is not available. Faced with such a situation, the damages expert in *TiVo* provided an estimate for future sales (based on past data) to provide evidence to the jury that would support a damages award for "post-discovery" infringing sales. *See* Exh. 1[1] (*TiVo v. Echostar* Trial Tr. at 44:1-17) ("But because that data had only gone through the end of January 2006 and, obviously, here we're at the beginning of April, I took my calculations through the end of March 2006."). ActiveVideo made no similar projection in this case.

---

[1] Exhibit numbers referenced herein refer to exhibits attached to the Declaration of Gregory N. Stillman in Support of Verizon's Opposition to Plaintiff's Motion for an Award of Prejudgment Interest, Post-judgment Interest and Damages For Defendants' Continuing Infringement.

Likewise, a second case relied upon by ActiveVideo involved a plaintiff that sought additional damages for "continuing activities during the period *after the jury's verdict* had been returned but before the permanent injunction issues." *Stryker Corp. v. Davol, Inc.*, 75 F. Supp. 2d 746 (W.D. Mich. 1999) (emphasis added). Again, this case focused on a damages period that was *subsequent* to the jury's verdict and provides no support for ActiveVideo's request for pre-verdict damages.

Three of the four cases cited by ActiveVideo – *TiVo, Stryker,* and *Maxwell* – are also inapplicable because they involved jury findings of willful infringement.[2] Under the Federal Circuit's holding in *Beatrice Foods,* a district court is only authorized to enhance the damages award in cases where the jury found willful infringement or bad faith. That is not the case here.

The final case cited by ActiveVideo, *Mikohn,* is distinguishable because the "jury was instructed that its damages award should include only a reasonable royalty through June 1999," which was well before the trial date. *Mikohn Gaming Corp. v. Acres Gaming, Inc.,* No. 297-cv-01383, 2001 U.S. Dist. LEXIS 23416, at *56 (D. Nev. Aug. 1, 2001). *Mikohn* is therefore inapposite because the jury was specifically instructed to limit its analysis to a certain time period. No such instruction existed in this case. In fact, ActiveVideo *opposed* Verizon's jury instruction that would have provided the jury with a clarification for the time period over which damages were sought. *See* Dkt. No. 769. In sum, none of the cases cited by ActiveVideo provide any support for its request for enhanced damages for a pre-verdict period.

---

[2] *See TiVo, Inc.* 2006 U.S. Dist. LEXIS 64291, at *1 ("The jury found that ... Defendants' infringement was willful"); *Stryker,* 75 F. Supp. 2d at 747 ("The jury determined that defendant [] had willfully infringed all four of the patent claims..."); *Maxwell v. J. Baker, Inc.,* 879 F. Supp. 1007, 1008 (D. Minn. 1996) ("The jury found that the infringement ... was willful.").

ActiveVideo's request for post-discovery damages should also be denied because it failed to request an accounting based on "post-discovery" sales in either the First Amended Complaint (Dkt. No. 28) or in the Final Pre-Trial Order (Dkt. No. 762). *See Lucent Tech., Inc. v. Newbridge Networks Corp.*, 168 F. Supp. 2d 269, 273 (D. Del. 2001) (denying the patent holder's request for an accounting and adjustment of damages to account for the time period between the verdict and judgment where patent holder failed to preserve such request in the Complaint or Final Pretrial Order). By providing the Court, the jury and Verizon with no clarity regarding the damages it sought to pursue, ActiveVideo must now be considered to have waived any claim it may have had regarding "post-discovery" damages. *Lucent*, 168 F. Supp. 2d at 273.

In addition, ActiveVideo's request for enhanced damages fails because it is based on unsupported assumptions about the jury's decision in this case. ActiveVideo claims that "the jury's damages award was based on the sales data through March 2011 that defendants had provided prior to trial" and therefore that "the jury's verdict omitted more than four months of defendants' infringing sales." *See* Motion at 10. While ActiveVideo accurately describes the information that was presented to the jury, there is no basis for ActiveVideo's characterization of basis for the jury's award. The jury awarded a damages amount – $115 million – that was not advocated by either party. While ActiveVideo presented a damages theory based on a running royalty, Verizon advocated a lump-sum amount that provided Verizon with a fully paid-up license to the patents. The only objective evidence available on the jury's intent can be found in this Court's instructions that the "damages you will award must be ***adequate to compensate the patent holder for the infringement***" and that the damages awarded "should put the patent holder in approximately the same financial position that it would have been in had the infringement not occurred." *See* Trial Tr. at 2919:11-16 (emphasis added). There were no additional instructions

7

that the jury should exclude certain "post-discovery" sales from its damages award. ActiveVideo neither objected to the Court's jury instruction on damages, nor sought any instruction regarding the damages period. *See* Trial Tr. at 2759:15-2760:11.

The verdict form, which asked just one question regarding damages, likewise provides no support for ActiveVideo's characterization of the award. *See* Dkt. No. 927 ("To what amount of damages has ActiveVideo shown it is entitled for Verizon's infringement."). ActiveVideo could have proposed – but did not – a verdict form containing other damages related questions. For example, ActiveVideo could have asked the jury to segregate its damages between the SeaChange and Cisco VOD systems, or to provide a reasonable royalty rate for Verizon's continued use of its current VOD system. Verizon proposed changes to the verdict form to address both of these issues but ActiveVideo objected. *See* Trial Tr. at 2760:15-24. In the absence of any evidence to the contrary – and ActiveVideo has failed to provide any – the only conclusion is that the jury provided a ***complete*** damages award for any claimed infringement. *See Weeks v. Angelone,* 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions."). The Court should not now step in and re-write history because ActiveVideo failed to carry its burden of proof with regard to "post-discovery" sales.

Recognizing these very same problems, the Fourth Circuit addressed the issue of "post-discovery" damages in a contract case and rejected a request for enhanced damages identical to the one ActiveVideo now presents. *See Wegco, Inc. v. Griffin Services, Inc.,* 19 Fed. Appx. 68 (4th Cir. 2001). After prevailing in a jury trial on its breach of contract claim, the plaintiff in *Wegco* asked the court for an accounting to increase the damages award to cover the time period between the most recent financial data available and the jury verdict. *Id.* at 72. The district court granted this request and modified the jury's award, but the Fourth Circuit reversed, noting that

"the district court violated [defendant]'s constitutional right to a jury trial when it supplemented [plaintiff]'s damages award." *Id.* at 73. Specifically, the Fourth Circuit held that the request for additional damages must be denied because "[a]ny attempt on our part to divine the methodology the jury employed to reach its verdict would amount to rank speculation." *Id.* at 74. Likewise, in this case, ActiveVideo offers only self-serving conjecture concerning the methodology employed by the jury in rendering its award, and its requested accounting would amount to a clear violation of the Seventh Amendment.

Finally, even if the Court had authority to augment the jury verdict, ActiveVideo's damages calculation for April through August 2011 is incorrect. Consistent with the methods he has used throughout this case, Mr. Wagner's calculation is based on an aggressive and erroneous assumption.[3] He assumes that Verizon added ███████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████.[4] This obvious

error caused Mr. Wagner to overstate ActiveVideo's claimed damages for ████████████████

████████████.

The following table shows the effect of Mr. Wagner's exaggerated estimates.

---

[3] ActiveVideo's request for "post-discovery" damages should also be denied because it is infected by all of the errors Verizon has identified in the damages testimony ActiveVideo presented to the jury. *See, e.g.,* Dkt. Nos. 806, 873, 878, and subsequent post-trial motions on damages to be filed by Verizon.

[4] *See* Declaration of Michael J. Wagner in Support of Plaintiff's Motion for an Award of Prejudgment Interest, Post-Judgment Interest and Damages for Continuing Infringement (hereafter "Wagner Dec."), Exhibit 1 at 6-7; Declaration of Eric J. Bruno (attached as Exh. 2, to Stillman Declaration, hereafter "Bruno Dec.") at ¶ 3.

| Month | Average Billable Accounts[5] | Royalty Rate | Actual Amount | Wagner Amount | Wagner Overstatement |
|-------|------------------------------|--------------|---------------|---------------|----------------------|
| April | ██████ | $1.13 | ████ | ████ | ████ |
| May | ██████ | $1.13 | ████ | ████ | ████ |
| June | ██████ | $1.13 | ████ | ████ | ████ |
| July | ██████ | $1.13 | ████ | ████ | ████ |
| August | ██████ | $1.13 | ████ | ████ | ████ |
|  |  |  |  |  |  |
| Total |  |  | ████ | ████ | ████ |

When Verizon's actual average billable accounts for April through July are used, along with a projection for August based on Verizon's actual average customer additions for 2010-11, the amount ActiveVideo seeks cannot exceed ████████.

## B.   ActiveVideo's Unreasonable Delay In Bringing Suit Precludes An Award Of Prejudgment Interest

ActiveVideo knew that Verizon intended to deploy the accused system months before Verizon launched FiOS TV services in 2005, and knew that SeaChange was Verizon's chosen VOD vendor at that time. *See* DX0543; Trial Tr. at 387:25-388:14; 1289-1290; 1301:1-23 (Miller). ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████ Waiting still two more years, ActiveVideo did not bring suit until 2010. ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

[5] *See* Bruno Dec. ¶ 2.

[6] Actual data for August 2011 is not available because the month is not over. *Id.* ¶ 2. "From January 2010 through July 2011, Verizon average number of FiOS TV billable lines increased by, on average, 60,691 per month." *Id.* ¶ 3. The table above reflects the use of this number to measure the projected increase in Verizon's average billable accounts for August 2011.

██████████████████████████████████████

████████████████████████████████ ActiveVideo provided

no notice to Verizon or SeaChange of any purported infringement until it filed this case in 2010.

ActiveVideo's unreasonable delay justifies the denial of its request for an award of prejudgment

interest.

Contrary to ActiveVideo's suggestion, an award of pre-judgment interest is not

automatic. As the Supreme Court has explained, "it may be appropriate to limit prejudgment

interest, or perhaps even deny it altogether, where the patent owner has been responsible for

undue delay in prosecuting the lawsuit." *Gen. Motors Corp. v. Devex Corp.,* 461 U.S. 648, 656-

57 (1983). Accordingly, district courts routinely deny requests for pre-judgment interest where

the plaintiff unreasonably delayed in filing suit. For example, the Federal Circuit has affirmed a

district court's denial of pre-judgment interest based upon a plaintiff's two-year delay in filing

suit. *See Crystal Semiconductor Corp. v. TriTech Microelectronics, Int'l,* 246 F.3d 1336, 1361-

62 (Fed. Cir. 2001). In affirming the district court's ruling, the Federal Circuit noted that the

delay "caused damages owed … to escalate," which resulted in "prejudice" to the defendant. *Id.*

at 62. The same outcome has been reached in many other cases. *See, e.g., Group One Ltd. v.*

*Hallmark Cards, Inc.,* 407 F.3d 1297, 1308 (Fed. Cir. 2005) (affirming that the district court did

not abuse its discretion in declining to award prejudgment interest on infringement that took

place during a twenty-month period, where the patent had expired for failure to pay maintenance

fees and the patentee delayed in seeking to revive its patent); *800 Adept, Inc. v. Murex Secs.,*

*Ltd.,* No. 02-1354, 2007 WL 1101238, at *3-4 (M.D. Fla. 2007) (denying prejudgment interest

due to patentee's three year and nine month delay in asserting its infringement claim).

ActiveVideo's delay of more than five years in instituting the present action was significantly longer than the delay in any of these cases.[7]

ActiveVideo had detailed knowledge of FiOS TV and the accused VOD system since well before the commercial launch of FiOS TV with VOD in September 2005. Before even speaking with Verizon, ActiveVideo was aware of many technical details of the accused VOD system. For example, ActiveVideo knew that Motorola would supply its basic platform components, that VOD would use IP protocol for interactive services, and that VOD (provided by another vendor) would be integrated onto the Motorola platform. *See* DX0837 at AVNW00745410-13; Trial Tr. at 374:6-375:7 (Miller); 1435:23-1437:5 (Zafar) (describing Verizon's selection of Motorola). Moreover, Mr. Miller acknowledged that as of March 2005, six months before FiOS TV launched, ActiveVideo was aware that Verizon was using the SeaChange VOD platform that was eventually accused of infringement in this suit. Trial Tr. 374:18-375:3; 1302:15-23 (Miller).[8]

Verizon and ActiveVideo had extensive discussions about FiOS TV in 2004-2006. *See* Trial Tr. at 2780:10-12 ("Now, we are not just talking about one meeting to give a little information, we are talking about months and months and months.") (ActiveVideo Closing Arg.). Notwithstanding this knowledge, ActiveVideo never suggested to Verizon that its VOD services might infringe ActiveVideo's patents until it filed the present litigation. *See* Trial Tr. at

---

[7] Nor can the Court's ruling on Verizon's laches motion (*see* Dkt. No. 932) preclude a denial of pre-judgment interest. The questions of whether a plaintiff should be denied pre-judgment interest and whether a plaintiff's claims are barred by the doctrine of laches are necessarily separate. For claims barred by laches, there are no damages on which to award pre-judgment interest.

[8] ActiveVideo's expert, Michael Wagner, also admitted that SeaChange was the market leader and sold its VOD system to the "largest cable providers." Trial Tr. at 1083:11-19; 1084:3-13 (Wagner); 1437:6-25 (Zafar); 1549:1-12 (Fuchs); Askenas Dep. Tr. at 96:5-96:15 (as played into the record at 2131:10-12).

287:23-288:2 (Miller); ███████████████████████████████████

███████████████████████████. Instead, when ActiveVideo learned that Verizon

selected SeaChange to provide its VOD system for FiOS TV, ActiveVideo informed Verizon

that ActiveVideo's technology easily could be integrated with, and operate alongside, the

SeaChange VOD system. *See* DX0543; Trial Tr. at 387:25-388:14; 1289-1290; 1301:1-23

(Miller).

ActiveVideo claimed that it did not have all of the technical details about Verizon's

system and that this somehow excused its delay. *See* Dkt. No. 897 ("None of this evidence

shows ActiveVideo knew or should have known of Verizon's infringement."). But ActiveVideo

has never identified a single shred of new information that it learned between the time of its

discussions with Verizon and when ActiveVideo filed this lawsuit. There is simply no excuse

for ActiveVideo's failure of diligence in filing the present suit. *See Wanlass v. Fedders Corp.,*

145 F.3d 1461, 1466 (Fed. Cir. 1998) ("As a patentee, [the plaintiff] could not simply ignore any

and all evidence of potentially infringing activity."). At a bare minimum, ActiveVideo had a

"duty to investigate a particular product if and when publicly available information about it

should have lead [the plaintiff] to suspect that product of infringing." *Id.* at 1466.



████████████████████████████████████████████████

██████████████████████████ Nevertheless, ActiveVideo did not bring this suit until roughly two

years later – precisely the length of delay the Federal Circuit has held is sufficient to justify the

denial of pre-judgment interest. *See Crystal Semiconductor,* 246 F.3d at 62.

████████████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████

ActiveVideo argues that one of the reasons for its five-year delay in bringing suit was its

hope that it could form a business deal with Verizon. *See* Dkt. No. 979.  But this does not excuse

ActiveVideo's failure to inform Verizon that it believed that Verizon was infringing its patents

while it pursued a business relationship with Verizon.  Moreover, ActiveVideo's alleged

motivation for its delay in filing suit is directly contradicted by the testimony of its own

witnesses, who repeatedly testified that ActiveVideo stopped pursuing Verizon as a customer in

or around 2008.  Trial Tr. at 315:4-12 (Miller) (discussing coming to the conclusion in 2008 that

"Verizon wasn't serious about doing business with us"); 375:4-7 (Miller); 375:12-376:3 (Miller);

600:7-10 (Taylor) (noting that ActiveVideo "shifted priority" to other customers); 544:8-14 (Regis). The true reason for ActiveVideo's delay is evidenced by the statements of ActiveVideo's CEO in a post-verdict press release, which noted that ActiveVideo filed suit to "provide[] further support for our customer, Cablevision, in their defense against Verizon's injunction claims within the U.S. International Trade Commission."[9] Given ActiveVideo's public admission that it brought this suit to "support" its only major customer, ActiveVideo cannot claim that it had a legitimate basis to refrain from notifying Verizon of its potential infringement because of its ongoing hopes for a business arrangement with Verizon.

The Court should deny ActiveVideo's request for pre-judgment interest based on the unreasonable five-year delay between when ActiveVideo first obtained knowledge of the accused activities and when it filed this suit against Verizon. This delay has tremendously prejudiced Verizon. As the Federal Circuit has recognized, a delay in bringing suit unfairly causes the meter to run on interest. *See Crystal Semiconductor,* 246 F.3d at 62. Had ActiveVideo filed suit in a timely fashion, nearly the entire period for which prejudgment interest is now sought would have been avoided. But by unreasonably delaying the filing of this suit until after Verizon became established in the market, ActiveVideo induced Verizon to undertake and time and expense of developing two VOD systems that ActiveVideo has accused of infringement. Now, after sitting on its claims for almost six years, ActiveVideo seeks to recover prejudgment interest for a delay in judgment that was entirely of its own making. Principles of equity and fairness dictate that this Court should deny ActiveVideo's request for prejudgment interest.

---

[9] *See* Exh. 5 (http://www.activevideo.com/pr_story.php?id=130 (last visited Aug. 22, 2011)).

15

**C.    There Is No Case Or Controversy As To Whether ActiveVideo Is Entitled To Post-Judgment Interest**

Verizon has filed a Notice of Appeal (Dkt. No. 955) and the question of whether ActiveVideo will recover on a final judgment in this case is unresolved. As a result, the issue is not yet ripe, and ActiveVideo's request for "only an award confirming its entitlement to post-judgment interest, not a particular amount" is precisely the sort of "abstract, hypothetical or contingent question" that this Court cannot answer through an advisory opinion. *See* Motion at 8; *Ala. State Fed'n of Labor v. McAdory,* 325 U.S. 450, 461 (1945) ("This Court is without power to give advisory opinions. It has long been its considered practice not to decide abstract, hypothetical or contingent questions.") (internal citations omitted); *see also Pub. Workers v. Mitchell,* 330 U.S. 75 (1947) ("As is well known, the federal courts established pursuant to Article III of the Constitution do not render advisory opinions."); *11126 Baltimore Boulevard v. Prince George's County, Md,* 924 F.2d 557, 558 (4th Cir. 1991) ("… we may not render an advisory opinion"). The Court should refrain from providing ActiveVideo with an advisory opinion on an issue that is not currently ripe for judicial determination. Likewise, should the Court determine that ActiveVideo is entitled to pre-judgment interest or "post-discovery" damages, any award for such supplemental damages should be deferred until the issues raised in Verizon's appeal are resolved.

## CONCLUSION

For the foregoing reasons, Verizon respectfully requests that the Court deny ActiveVideo's Motion for an Award of Prejudgment Interest, Post-Judgment Interest and Damages for Defendants' Continuing Infringement.

Dated:  August 22, 2011

Respectfully submitted,

**VERIZON COMMUNICATIONS INC.,**
**VERIZON SERVICES CORP.,**
**VERIZON VIRGINIA INC.** and
**VERIZON SOUTH INC.**


/s/

Gregory N. Stillman (VSB #14308)
Brent L. VanNorman (VSB #45956)
**HUNTON & WILLIAMS LLP**
50 East Main Street, Suite 1000
Norfolk, VA  23510
Telephone:  (757) 640-5300
Facsimile:  (757) 625-7720
gstillman@hunton.com
bvannorman@hunton.com

Brian M. Buroker (VSB # 39581)
Bradley T. Lennie *(Pro Hac Vice)*
Justin T. Arbes *(Pro Hac Vice)*
**HUNTON & WILLIAMS LLP**
2200 Pennsylvania Ave, NW
Washington, DC  20037
Telephone:  (202) 955-1500
Facsimile:  (202) 778-2201
bburoker@hunton.com
blennie@hunton.com
jarbes@hunton.com

Henry B. Gutman *(Pro Hac Vice)*
Patrick E. King *(Pro Hac Vice)*
Noah M. Leibowitz *(Pro Hac Vice)*
Jason M. Bussey *(Pro Hac Vice)*
Lisa H. Rubin *(Pro Hac Vice)*
**SIMPSON THACHER & BARTLETT LLP**
425 Lexington Avenue
New York, NY 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502
hgutman@stblaw.com
pking@stblaw.com
nleibowitz@stblaw.com
jbussey@stblaw.com
lrubin@stblaw.com

17

Leonard C. Suchyta *(Pro Hac Vice)*
John P. Frantz (VSB #41450)
Caren K. Khoo *(Pro Hac Vice)*
**VERIZON CORPORATE RESOURCES GROUP LLC**
One Verizon Way
Basking Ridge, NJ 07920
Telephone:  (908) 559-5623
Facsimile:  (908) 766-6974
leonard.suchyta@verizon.com
john.frantz@verizon.com
caren.khoo@verizon.com

Michael K. Kellogg *(Pro Hac Vice)*
Mark C. Hansen *(Pro Hac Vice)*
**KELLOGG, HUBER, HANSEN, TODD,
   EVANS & FIGEL, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, DC 20036
Telephone:  (202) 326-7900
Facsimile:  (202) 326-7999
mkellogg@khhte.com
mhansen@khhte.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2011, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following counsel of record:

Stephen E. Noona (VSB #25367)
**KAUFMAN & CANOLES, P.C.**
150 W. Main Street, Suite 2100
Norfolk, VA 23514
Telephone: (757) 624-3000
Facsimile: (757) 624-3169
senoona@kaufcan.com

Nathan W. McCutcheon (VSB #36308)
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 739-3000
Facsimile: (202) 739-3001
nmccutcheon@morganlewis.com

Daniel Johnson, Jr.
Michael J. Lyons
Dion M. Bregman
Ahren C. Hoffman
Michael F. Carr
Lorraine M. Casto
Jason Gettleman
**MORGAN, LEWIS & BOCKIUS, LLP**
2 Palo Alto Square
3000 El Camino Real, Suite 700
Palo Alto, CA 94306-2122
Telephone: (650) 843-4000
Facsimile: (650) 843-4001
djjohnson@morganlewis.com
mlyons@morganlewis.com
dbregman@morganlewis.com
ahoffman@morganlewis.com
mcarr@morganlewis.com
lcasto@morganlewis.com
jgettleman@morganlewis.com

Brett M. Schuman
**MORGAN, LEWIS & BOCKIUS, LLP**
One Market, Spear Street Tower
San Francisco, CA  94105
Telephone:  (415) 442-1000
Facsimile:  (415) 442-1001
bschuman@morganlewis.com

*Counsel for Plaintiff*

_____/s/_____
Gregory N. Stillman (VSB #14308)
**HUNTON & WILLIAMS LLP**
500 East Main Street, Suite 1000
Norfolk, VA  23510
Telephone:  (757) 640-5300
Facsimile:  (757) 625-7720
bvannorman@hunton.com

*Counsel for Defendants*

20