**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | |
|---|---|
| _____ ) | |
| **ACTIVEVIDEO NETWORKS, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 2:10-cv-00248-RAJ-DEM |
| ) | |
| **VERIZON COMMUNICATIONS INC.,** ) | |
| **VERIZON SERVICES CORP.,** ) | |
| **VERIZON VIRGINIA INC., and** ) | |
| **VERIZON SOUTH INC.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**REPLY IN SUPPORT OF VERIZON'S EXPEDITED MOTION
TO WAIVE, OR IN THE ALTERNATIVE TO APPROVE, A SUPERSEDEAS BOND
AND TO STAY EXECUTION OF JUDGMENT PENDING APPEAL**

**INTRODUCTION**

A supersedeas bond would serve but one purpose in this case: to increase the parties' costs by hundreds of thousands of dollars. This conclusion follows incontrovertibly from two facts, neither of which is in dispute. First, ActiveVideo does not deny that a bond would cost $316,250 annually. Second, ActiveVideo does not dispute that the real-world chances of Verizon failing to satisfy any judgment entered after appeal are nil. Indeed, aside from a few passing references to "present economic circumstances," ActiveVideo does not even attempt to explain how Verizon, in light of its demonstrated cash reserves and assets within reach of the Court, might somehow fail to pay.

The law, moreover, is clear. This Court has discretion to enter a stay without a supersedeas bond. ActiveVideo's assertion that the Court would have to make "new law" to do so simply is not correct. This Court has itself recognized the propriety of an unsecured stay

where, as in this case, "the judgment debtor can currently easily meet the judgment and demonstrates that it will maintain the same level of solvency during appeal . . . ." *Alexander v. Chesapeake, Potomac, & Tidewater Books, Inc.,* 190 F.R.D. 190, 193 (E.D. Va. 1999). Many courts have granted stays under those circumstances, and they have done so on facts less compelling than those presented here.

That Verizon intends to raise serious issues on appeal is clear. And, for better or worse, the reversal rate at the Federal Circuit is significant, a fact this Court recognized when it stated that, in all likelihood, "we are going to be back here doing this again." Dkt. No. 755 at 17:21-18:2. It makes little sense for ActiveVideo, which recently cited the costs incurred in prosecuting this action as basis for an injunction, to insist on imposing additional costs without any material benefit, particularly given that it will be taxed with those costs if Verizon prevails. But ActiveVideo's insistence on fighting for its own sake should not overcome common sense. A stay should not be conditioned on a costly bond that would benefit neither party. In the alternative, the Court should find Verizon's proffered bond sufficient or permit it to provide a bond in whatever amount it deems is appropriate.

## ARGUMENT

### I. A SUPERSEDEAS BOND IS NOT NECESSARY TO PROTECT ACTIVEVIDEO'S INTERESTS

ActiveVideo does not seriously challenge the premise of Verizon's motion, which is that a bond would be both costly and unnecessary to safeguard ActiveVideo's interests pending appeal. ActiveVideo does not dispute the cost of the bond, the strength of Verizon's financial condition, or Verizon's ability to pay. In support of its claim that a bond is nonetheless "necessary to protect ActiveVideo," ActiveVideo resorts to platitudes, stating that no company is immune to "financial difficulty" or "impervious to bankruptcy." Opp. at 8-9. Tellingly, ActiveVideo makes no attempt to argue that *Verizon* is in any danger of bankruptcy or that there

2

is any reason to think *Verizon* faces any risk of financial ruin – arguments it cannot credibly make in light of the evidence Verizon has presented. ActiveVideo's platitudes notwithstanding, the fact also remains that Verizon has offered to provide periodic reports of its financial condition and has demonstrated an ability to obtain a bond in a matter of days. Thus, even in the unlikely event that Verizon's financial condition were to materially worsen during the pendency of the appeal, ActiveVideo could protect its rights by renewing its request for a bond at that time. ActiveVideo's failure to dispute these basic facts belies any suggestion that a bond is necessary to maintain the status quo.

## II. A SUPERSEDEAS BOND IS NOT REQUIRED BY LAW

Contrary to ActiveVideo's representations, (Opp. at 1-2), Rule 62 does not "require" a bond or state that a bond "shall" be posted; to the contrary, it provides that an "appellant *may* obtain a stay pursuant to a supersedeas bond." FED. R. CIV. P. 62(d). The rule is permissive rather than mandatory. This Court reached the same conclusion in *Alexander*, noting that "a district court's inherent discretionary power to stay judgments pending appeal on the basis of less than a full supersedeas bond, or no bond, is not addressed or affected by Rule 62(d), which establishes only the narrow proposition that a full supersedeas bond *entitles* an appellant to the issuance of a stay . . . ." *Alexander*, 190 F.R.D. at 192-93 (emphasis in original); *see also, e.g., Quarles v. Miller,* 193 B.R. 779, 782 (W.D. Va. 1996) ("The posting of a supersedeas bond is not a prerequisite to obtaining a stay pending appeal; rather, the requirement of posting a supersedeas bond is *discretionary*.") (emphasis in original). Rule 62(d) thus erects no barrier to Verizon's request for an unsecured stay pending appeal.

ActiveVideo claims that Verizon has "ask[ed] this Court to create new Fourth Circuit law" (Opp. at 1), insisting that "[n]o court in this Circuit has excused compliance with the bonding requirements . . . based on the judgment debtor's claim that it is well-off[.]" *Id.*

3

ActiveVideo's statement of the law is misleading at best. In point of fact, "[t]he Fourth Circuit has not adopted *any* particular standard to guide a District Court's exercise of discretion in granting unsecured stays." *CapitalSource Finance LLC v. Pittsfield Weaving Co.*, No. AW-06-2028, 2008 WL 3850385, at *1 (D. Md. Mar. 7, 2008) (emphasis added). Nonetheless, Courts within the Fourth Circuit, including this Court, *have* expressly recognized that "a full bond may not be necessary . . . when the judgment debtor can currently easily meet the judgment and demonstrates that it will maintain the same level of solvency during appeal." *Alexander*, 190 F.R.D. at 193 (internal citations and quotations omitted). That is precisely the rule Verizon invokes here, which courts have applied time and again.

ActiveVideo's attempts to distinguish cases granting unsecured stays serve only to underscore the reasonableness of Verizon's request. ActiveVideo claims *N. Indiana Pub. Serv. v. Carbon County Coal*, 799 F.2d 265, 281 (7th Cir. 1986) is inapposite because the judgment creditor there "sought on appeal to substitute its damages award for specific performance." Opp. at 10. So it did, but the court offered as an *independent basis* for its ruling the fact that the cost of a bond would have been considerable and the benefits doubtful due to the defendant's sound financial condition. Thus, after noting that there were "two grounds" for not requiring a bond, the court described the second as follows:

> An appeal bond usually costs one percent of the amount secured, which in the case of a $181 million judgment is almost $2 million. That is not small change; and if the district judge is satisfied that the expenditure is unnecessary to protect the appellee, he does not have to insist that it be spent. NIPSCO has assets of more than $4 billion, revenues of almost $2 billion a year, and a net worth of more than $1 billion. A public utility, it is in no financial jeopardy, it is not about to place its assets beyond the reach of this judgment creditor, and it is, in short, good for the $181 million. Should NIPSCO's ability to pay begin to deteriorate, Carbon County can always petition the district judge for supplementary relief; he has even required periodic reports from NIPSCO to make it easier to monitor the company's financial health.

*Carbon County Coal*, 799 F.2d at 281. The same circumstances are present here, and the same rationale applies. At $316,250 annually, the cost of the bond in this case is certainly "not small change," and Verizon is likewise far from facing any financial jeopardy. Quite the opposite: it indisputably has over $6.2 billion in cash and cash equivalents, and ActiveVideo has never so much as suggested that Verizon might somehow place those "assets beyond . . . reach" during appeal *Id.* Finally, Verizon, too, has offered periodic financial reports, allowing ActiveVideo to promptly seek supplemental relief if necessary.

ActiveVideo's attempt to distinguish *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 760 (D.C. Cir. 1980) fares no better. ActiveVideo points out that, there, "the damages award was only $102,000" (Opp. at 10), but it fails to explain why that distinction should make a difference. What is relevant is not the amount of the award but the costs of obtaining a bond and the ratio of the award to the defendant's net worth. Both factors more strongly support an unsecured stay here than in *Prescription.* In granting an unsecured stay, that court noted that "the documented net worth of the judgment debtor was $4.8 million, about 47 times the amount of the damage award." *Id.* Here, Verizon's over $6.2 billion in cash reserves alone are approximately 54 times the amount of the judgment. Moreover, the cost of obtaining a $115,000,000 bond – money that will be spent by one side no matter the outcome on appeal – is orders of magnitude greater than for a $102,000 bond.

Finally, as for *Dillon v. Chicago*, 866 F.2d 902, 905 (7th Cir. 1989), ActiveVideo merely points out that damages were to be paid from an "existing adequately capitalized" fund, which the court noted would occur within "thirty days." Opp. at 9-10. Here, Verizon has also established that it is more than adequately capitalized to satisfy the judgment should it lose on appeal, and it has undertaken to transfer funds to ActiveVideo in only fifteen days following the

5

completion of all appeal and remand proceedings, half the time found sufficient to protect the plaintiff's interests in *Dillon*.

## III. ACTIVEVIDEO'S AUTHORITIES DO NOT DICTATE A DIFFERENT RESULT

ActiveVideo makes much of the fact that the "usual requirement" is for appellants to obtain a supersedeas bond during the pendency of an appeal. Opp. at 3. But the facts of this case are anything but "usual." Usually, appellants do not have $6.2 billion in verifiable cash reserves and equivalents. Usually, bonds do not cost hundreds of thousands of dollars. And, usually, the concerns raised by Local Rule 62(B) are not implicated: that is, here, unlike in most cases, there is a real question as to whether ActiveVideo, as the appellee, can reimburse Verizon for the costs of the bond in the event of a reversal, given the amounts involved and ActiveVideo's precarious financial situation. *See* Trial Tr. 394:5-13 (Miller) (conceding that ActiveVideo relies on monthly cash infusions from investors).

ActiveVideo also cites cases in which courts declined to grant unsecured stays despite the defendant's representations of solvency. None of those cases are binding. And most are clearly distinguishable on their facts. Some, for instance, involved judgments that could be collected only through cumbersome and lengthy legal processes, a fact that courts recognize as presenting an independent reason to require a supersedeas bond.[1] Others involved defendants who failed to adequately establish their financial stability.[2] And still others involved bond

---

[1] *See Lightfoot v. Walker*, 797 F.2d 505, 506-07 (7th Cir. 1986) (declining to grant unsecured stay where procedure for collecting judgment against State of Illinois was "cumbersome" "time-consuming" and "uncertain," in part because "state legislature [must] vote to appropriate the money necessary to pay it"); *Southeast Booksellers Ass'n v. McMaster*, 233 F.R.D. 456, 460 (D.S.C. 2006) (requiring bond where plaintiffs could not be paid until "the South Carolina Legislature enacts an appropriation to satisfy the judgment").

[2] *Tomasko v. Weinstock*, P.C., No. 3:98-cv-1978, 2009 WL 613590, at *1 (M.D. Pa. Mar. 6, 2009) ("Here, Defendants have failed to make any showing at all regarding Mr.

6

amounts small enough that the costs involved in obtaining them were not a meaningful consideration.[3] None of those factors are present here.

Finally, relying solely on cases from outside of this district and mostly outside of the Fourth Circuit, ActiveVideo urges the Court to apply a four-factor test to determine whether an unsecured bond is appropriate in this case. Opp. at 5-6. To the extent those cases hold that a separate four-factor test must be satisfied before an unsecured stay may be granted, they are inconsistent with this Court's opinions. *See Alexander*, 190 F.R.D. at 193 (recognizing propriety of stay without bond where "judgment debtor can currently easily meet the judgment;" making no reference to four-factor test). Moreover, those cases apply the four-factor test to determine whether a stay will issue *at all*. Here, there is no question that Verizon is entitled to a stay, as it has established its willingness to post a full supersedeas bond if the Court so orders, and to thereby obtain a stay as of right. The only question is whether, and to what extent, a bond is appropriate. As to that question, even ActiveVideo's cases agree that "a bond may not be necessary . . . when the judgment debtor can currently easily meet the judgment and demonstrates that it will maintain the same level of solvency during appeal . . . ." *Kirby v. Gen.*

---

    Weinstock or his firm's financial condition or offer any reason that posting a bond would be a waste of money."); *Marcoux v. Farm Serv. & Supplies, Inc.*, 290 F. Supp. 2d 457, 485-86 (S.D.N.Y. 2003) (requiring bond where defendant failed to submit evidence of financial solvency and its insurer had been placed in receivership); *Delta Health Grp., Inc. v. Royal Surplus Lines Ins. Co.*, No. 3:05-cv-108/RV/MD, 2008 WL 4372876, at *1 (N.D. Fla. Sept. 24, 2008) (declining to grant stay where defendant's "financial condition is questionable")

[3]   *See, e.g., See Verhoff v. Time Warner Cable, Inc.*, No. 3:05CV7277, 2007 WL 4303743, at*3 (N.D. Ohio Dec. 10, 2007) (emphasizing that bond for only $300,000 would pose "little financial burden" for party with $2.1 billion in revenues); *Progressive Foods, LLC v. Dunkin' Donuts Inc.*, No. 1:07 CV 3424, 2011 WL 1601335, at *2-3 (N.D. Ohio Apr. 27, 2011) (requiring bond involving judgment for $236,000 where defendant's assets exceeded $40 million).

*Elec. Co.*, 210 F.R.D. 180, 195 (W.D.N.C. 2000). Verizon satisfies this test for all the reasons set forth above.

### IV. IN THE ALTERATIVE, VERIZON'S SUPERSEDEAS BOND SHOULD BE APPROVED

Should the Court determine that a bond is necessary, Verizon's tendered bond should be approved and a stay granted. Where a party posts a supersedeas bond sufficient to secure a damages judgment, stay of execution is not discretionary, but is "automatic." *Becker v. U.S.*, 451 U.S. 1306, 1308 (1981). Because such stays are a matter of right under Federal Rule of Civil Procedure 62(d), the only condition that must be met is the Court's approval of the sufficiency of the supersedeas bond. Verizon has obtained such a bond, and the obligation to pay for it becomes ripe when it is formally posted with the Court.

The Court here entered judgment in favor of ActiveVideo for $115 million and costs. At the present time, no costs have been taxed, and Verizon has confirmed its ability to obtain a supersedeas bond that is sufficient to maintain the status quo pending appeal. Should ActiveVideo be awarded any additional amounts post-trial, Verizon can supplement the amount of the bond or obtain a new bond at that time. The bond also meets all relevant statutory requirements. Liberty Mutual Surety is the second-largest surety writer in the United States, is licensed to do business in Virginia, and holds a certificate of authority from the Secretary of the Treasury of the United States in compliance with the statutory requirements pursuant to 31 U.S.C. §§ 9304-06 and Local Civil Rule 65(A). *Id.*, Exs. B, C. Thus, in the event that the Court decides not to waive the supersedeas bond, the amount and nature of the tendered supersedeas bond are sufficient to reliably secure ActiveVideo's interests in the judgment and should be approved.

## **CONCLUSION**

Verizon respectfully requests that the Court grant a stay without a supersedeas bond, or in the alternative that it approve the bond Verizon has tendered or permit Verizon to submit a bond in whatever amount the Court deems appropriate.

Dated: September 1, 2011

Respectfully submitted,

**VERIZON COMMUNICATIONS INC.,**
**VERIZON SERVICES CORP.,**
**VERIZON VIRGINIA INC.** and
**VERIZON SOUTH INC.**

/s/
Gregory N. Stillman (VSB #14308)
Brent L. VanNorman (VSB #45956)
**HUNTON & WILLIAMS LLP**
500 East Main Street, Suite 1000
Norfolk, VA 23510
Telephone: (757) 640-5300
Facsimile: (757) 625-7720
gstillman@hunton.com
bvannorman@hunton.com

Brian M. Buroker (VSB # 39581)
Bradley T. Lennie *(Pro Hac Vice)*
Justin T. Arbes *(Pro Hac Vice)*
**HUNTON & WILLIAMS LLP**
1900 K Street, NW
Washington, DC 20006
Telephone: (202) 955-1500
Facsimile: (202) 778-2201
bburoker@hunton.com
blennie@hunton.com
jarbes@hunton.com

Henry B. Gutman (*Pro Hac Vice*)
Patrick E. King (*Pro Hac Vice*)
Noah M. Leibowitz (*Pro Hac Vice*)
Jason M. Bussey (*Pro Hac Vice*)
**SIMPSON THACHER & BARTLETT LLP**
425 Lexington Avenue
New York, NY 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502
hgutman@stblaw.com
pking@stblaw.com
nleibowitz@stblaw.com
jbussey@stblaw.com

Leonard C. Suchyta *(Pro Hac Vice)*
John P. Frantz (VSB #41450)
Caren K. Khoo *(Pro Hac Vice)*
**VERIZON CORPORATE RESOURCES GROUP LLC**
One Verizon Way
Basking Ridge, NJ 07920
Telephone: (908) 559-5623
Facsimile: (908) 766-6974
leonard.suchyta@verizon.com
john.frantz@verizon.com
caren.khoo@verizon.com

Michael K. Kellogg (*Pro Hac Vice*)
Mark C. Hansen (*Pro Hac Vice*)
**KELLOGG, HUBER, HANSEN, TODD,
  EVANS & FIGEL, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, DC 20036
Telephone: (202) 326-7900
Facsimile: (202) 326-7999
mkellogg@khhte.com
mhansen@khhte.com

*Counsel for Defendants*


## **CERTIFICATE OF SERVICE**

I hereby certify that on September 1, 2011, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following counsel of record:

Stephen E. Noona (VSB #25367)
**KAUFMAN & CANOLES, P.C.**
150 W. Main Street, Suite 2100
Norfolk, VA 23514
Telephone: (757) 624-3000
Facsimile: (757) 624-3169
senoona@kaufcan.com

Nathan W. McCutcheon (VSB #36308)
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 739-3000
Facsimile: (202) 739-3001
nmccutcheon@morganlewis.com

Daniel Johnson, Jr.
Michael J. Lyons
Dion M. Bregman
Ahren C. Hoffman
Michael F. Carr
Lorraine M. Casto
Jason Gettleman
**MORGAN, LEWIS & BOCKIUS, LLP**
2 Palo Alto Square
3000 El Camino Real, Suite 700
Palo Alto, CA 94306-2122
Telephone: (650) 843-4000
Facsimile: (650) 843-4001
djjohnson@morganlewis.com
mlyons@morganlewis.com
dbregman@morganlewis.com
ahoffman@morganlewis.com
mcarr@morganlewis.com
lcasto@morganlewis.com
jgettleman@morganlewis.com

<div style="text-align:center">
Brett M. Schuman
**MORGAN, LEWIS & BOCKIUS, LLP**
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000
Facsimile: (415) 442-1001
bschuman@morganlewis.com
</div>

*Counsel for Plaintiff*

                                        /s/
                            Brent L. VanNorman (VSB #45956)
                            **HUNTON & WILLIAMS LLP**
                            500 East Main Street, Suite 1000
                            Norfolk, VA 23510
                            Telephone: (757) 640-5300
                            Facsimile: (757) 625-7720
                            bvannorman@hunton.com

                            *Counsel for Defendants*