

FILED
NOV 7 2011
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ACTIVEVIDEO NETWORKS, INC.,

    **Plaintiff,**

V.                                                                                    CIVIL ACTION NO. 2:10cv248

VERIZON COMMUNICATIONS, INC.,
VERIZON SERVICES CORP.,
VERIZON VIRGINIA INC., and
VERIZON SOUTH INC.

    **Defendants.**

## *MEMORANDUM OPINION AND ORDER*

Before the Court is Defendants', Verizon Communications Inc., Verizon Services Corp., Verizon Virginia Inc., and Verizon South Inc. (collectively, "Verizon"), Motion to Alter or Amend the Judgment Based on Newly Discovered Evidence, pursuant to Federal Rule of Civil Procedure 59(e). Having carefully reviewed the parties' memoranda, the Court finds this matter ripe for judicial determination. For the reasons stated herein, Defendants' Motion to Alter or Amend the Judgment Based on Newly Discovered Evidence is **DENIED**.

### I. FACTUAL & PROCEDURAL HISTORY

Verizon asks the Court to amend its August 2, 2011, judgment of invalidity of claim 13 of U.S. Patent No. 6,381,748 ("the '748 patent"). On May 10, 2011, the Court granted ActiveVideo's Motion for Partial Summary Judgment that the '748 patent is invalid as anticipated under 35 U.S.C. § 102(e) by U.S. Patent No. 6,034,689 ("the '689 patent") issued to WebTV Networks, Inc. In so doing, the Court determined the '689 patent is prior art to the '748

1

patent because the filing date of the '689 patent of June 3, 1996, predates the invention of the '748 patent. *See* Mem. Op. & Order 12 (May 10, 2011), Dkt. No. 442.

Now Verizon argues that they have discovered new, material evidence establishing a conception date on claim 13 of the '748 patent of no later than May 1996 – before the June 3, 1996, filing of the '689 patent. Specifically, Verizon contends that on August 2, 2011, one of the co-inventors of the '748 patent, Howard S.K. Wan ("Mr. Wan"), produced documentation of invoices from his Boston-area home showing that he and his co-inventor, Eric Lin ("Mr. Lin"), had conceived of the idea of using a customer browser installed in the network server to transfer data network information, such as information from the Internet, for display on a television. Mr. Wan believes this invention was the key step in claim 13 of the '748 patent. Wan Decl. ¶ 30. Verizon asserts that the May invoice and Mr. Wan's statements in his declaration prove that the '689 patent does not invalidate the '748 patent.

Verizon did not provide this evidence to the Court when the Court ruled on ActiveVideo's initial summary judgment motion. They argue that they were unable to offer it because it was located in Mr. Wan's home while Mr. Wan was abroad in China. *See* Defs.' Mem. Supp. Mot. Alter or Am. J. 3-5. On May 18, 2010, Verizon interviewed and agreed to represent the co-inventor, Mr. Lin. Lin Decl. ¶ 8. Verizon requested that Mr. Lin search his records for any files containing information regarding the '748 patent, but Mr. Lin reported to Verizon's counsel that he had found no documents regarding the patent. *Id.*

Verizon then attempted to contact Mr. Wan, who worked as a software developer and subcontractor to Verizon during the 1990s. Wan Decl. ¶ 3. Mr. Wan stopped working for Verizon in 2000 and had no contact with Verizon from 2000 until June 17, 2010. *Id.* ¶ 15. On

2

March 29, 2010, Verizon located a telephone number for Mr. Wan in the Boston metropolitan area. Fetterman Decl. ¶ 4. On May 29, 2010, Verizon's counsel spoke with Mr. Wan's wife. *Id.* ¶ 3. She informed Verizon that Mr. Wan was out of town but would respond back to counsel. *Id.*

On June 17, 2010, Verizon spoke with Mr. Wan for the first time, requested his cooperation, and offered to represent him. *Id.* Verizon's counsel inquired about the conception date of the '748 patent, but Mr. Wan could not remember the exact dates he worked on the '748 patent without reviewing his documents. Wan Decl. ¶ 18. Mr. Wan believed that any documents related to the '748 patent would be at his home in the Boston area. *Id.* ¶ 17. Mr. Wan explained to Verizon's counsel that he was currently in China, that he did not know when he was returning to the United States, and that he could not access those documents while he was out of the country. *Id.* Mr. Wan declined to allow Verizon to search his home in his absence. *Id.* However, on July 13, 2010, he signed an agreement to allow Verizon to represent him in connection with the '748 patent litigation. *Id.* In September 2010, counsel for Verizon asked Mr. Wan, who was still in China, whether he would agree to let Verizon's counsel accept service of a subpoena and coordinate the collection of documents in Mr. Wan's possession. *Id.* ¶ 21. Mr. Wan again declined. *Id.*

From October 2010 to June 2011, Verizon lost contact with Mr. Wan. Verizon insists that they attempted to contact Mr. Wan multiple times during this period. Finally, on June 30, 2011, Verizon located Mr. Wan using an email address Mr. Lin provided them. Fetterman Decl. ¶ 8. Two days later, Mr. Wan called Verizon's counsel and provided them with a cell phone number where he could be reached. *Id.* Mr. Wan was now in California where he had been since

February 28, 2011. Wan Decl. ¶ 25. Because Verizon had not spoken to Mr. Wan, they had no knowledge of his relocation to California. Fetterman Decl. ¶ 8-9. It was not until this phone call that Verizon set up a meeting with Mr. Wan to review the documents located in his home. On August 2, 2011, Mr. Wan located the invoices Verizon has brought before the Court. Defs.' Mem. Supp. 6.

## II. LEGAL STANDARD

"Although Rule 59(e) does not itself provide a standard under which a district court may grant a motion to alter or amend a judgment, we have previously recognized that there are three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pacific Ins. Co. v. American Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (citations omitted). "[A] moving party must demonstrate that the supplemental evidence is newly discovered, that due diligence to discover the evidence was previously exercised, that the evidence was material and not merely cumulative or impeaching, and is likely to produce a new outcome if the case were retried." *Dorsey v. Housing Auth. of Baltimore City*, 984 F.2d 622, 631-62 (4th Cir. 1993).

Altering or amending a judgment under Rule 59(e) is within the sound discretion of the Court. *See Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 724 (4th Cir. 1991). It is not enough for a moving party to demonstrate that it exercised some diligence regarding the newly discovered evidence, but ' "the movant is *obliged* to show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence at the hearing.' " *Boryan v. United States*,

884 F.2d 767, 771 (4th Cir. 1989) (quoting *Frederick S. Wyle P.C. v. Texaco, Inc.*, 764 F.2d 604, 609 (9th Cir. 1985)) (citations omitted).

## III. DISCUSSION

### A. Whether the Evidence is in Fact Newly Discovered

"The first two elements of the newly discovered evidence test are whether evidence is, 'in fact newly discovered,' and whether there are facts alleged 'from which the court may infer diligence on the part of the movant.' " *Henley v. FMC Corp.*, 20 F. App'x 108, 115 (4th Cir. 2001) (quoting *United States v. Custis*, 988 F.2d 1355, 1359 (4th Cir. 1993)).

Courts treat evidence as "newly discovered" when that evidence is not previously known or available to the moving party. *See Boryan*, 884 F.2d at 771. As early as September 2010, Verizon contacted Mr. Wan and informed him that they wanted to "coordinate the collection of documents in Mr. Wan's possession in connection with several litigation matters." Fetterman Decl. ¶ 7. While Verizon may not have known exactly what they would find in Mr. Wan's home, they knew that documents were there that could potentially aid Verizon in this case and in other litigation. In fact, the only location Mr. Wan ever mentioned as containing evidence relating to the '748 patent was his home in Massachusetts. Wan Decl. ¶ 17.

Evidence which has existed through the entirety of a litigation is typically not the type of evidence the Fourth Circuit has treated as newly discovered. *See, e.g., Boryan*, 884 F.2d at 771 (holding that form which had been in executrix's file all along was not discovered due to counsel's failure to act diligently in discovering it). Verizon suggests that *Boryan* is not instructive because the moving party in *Boryan* (not a third party) possessed the relevant

evidence.[1] Reply Defs.' Mot. 17. Instead, Verizon relies on *Henley*. In *Henley*, the plaintiff offered a surprise witness at trial to rebut the testimony of the defendant's expert. *Henley*, 20 F. App'x at 115. In order to dispute the surprise witness' testimony, the defendant needed to have a different expert testify who was traveling through "the remote silk trade routes to China." *Henley*, 20 F. App'x at 112 n. 6. Verizon believes that *Henley* aligns more closely with the facts of the instant motion because Mr. Wan, like the crucial witness in *Henley*, was out of the country. Reply Defs.' Mot. Alter or Am. J. 11 (citing *Henley*, 20 F. App'x at 116).

The Court finds *Henley* distinguishable on two significant grounds. First, in *Henley*, the court was concerned mostly with the surprise witness' testimony that rendered the defendant's failure to have a witness present excusable because "even exercising the height of diligence, [defendant] could [not] have anticipated that it would have to develop evidence to respond to inaccurate testimony by a surprise witness . . . ." *Henley*, 20 F. App'x at 116. No element of surprise is present here. Verizon knew for over a year prior to this Court's ruling that the only place these documents could have been located was Mr. Wan's home. The defendant in *Henley never* knew about the surprise witness.

Secondly, in *Henley*, the element of surprise provided defendant with little time to reach the witness they needed who was in various remote locations in China. There is no evidence from *Henley* that the defendant ever communicated with the key witness once the witness was in China or that the defendant had the capability of reaching other individuals (e.g., a spouse or a co-inventor) who may have been able to provide them with contact information to locate the

---

[1] Here, Verizon asserts that Mr. Wan was a third party because Verizon no longer employed Mr. Wan at the time of this litigation.

witness. Verizon had substantially more time to locate the evidence or locate individuals who could have helped them get in touch with the inventor before and after he returned to the country. Verizon had these options at their disposal. The defendant in *Henley* did not. In the instant case, the relevant invoices were in Mr. Wan's home the entire time, precisely where both he and Verizon knew (for a year) they would be. In light of these facts, the Court does not believe the evidence can be considered newly discovered.

## B. Whether Due Diligence Was Exercised

Even if the evidence was newly discovered, Verizon still must have exercised the requisite due diligence in attempting to discover the evidence. Verizon contends that they exercised "due diligence and made all reasonable efforts to discover any such information and to locate any and all documents relevant to the '748 patent." Defs.' Mem. Supp. 8. Notwithstanding Verizon's claim, the Court concludes that Verizon failed to exercise reasonable due diligence in attempting to discover this evidence.

Throughout this litigation, Verizon has demonstrated that they are willing to vigorously defend against ActiveVideo's claims. They have exerted countless financial resources and logged thousands of man-hours to oppose ActiveVideo's infringement claims. Ultimately, however, when it came to the alleged newly discovered evidence, Verizon displayed a clear lapse in the usual due diligence and vigor which they have previously proven they are more than capable of exercising. Undoubtedly, there were spurts during their search for the evidence where Verizon did exercise diligence, but the Court finds a serious deficiency in Verizon's failure to locate Mr. Wan using any method of communication from October 2010 to June 2011. At the Court's hearing on this motion, Verizon's counsel conceded that "they lost communication with

Mr. Wan." *See* Hearing Tr. 75:21-22, Oct. 24, 2011, Dkt. No. 1162. That loss of communication extended for approximately nine months. Verizon claims that they tried to contact Mr. Wan during this time but their attempts were unsuccessful. Defs.' Mem. Supp. 5.

In spite of these attempts, Verizon did not provide the Court with any evidence that they spoke with Mr. Wan's wife during the nine months prior to their initial communication with Mr. Lin to inquire into Mr. Wan's whereabouts. Furthermore, before the aforementioned communication with Mr. Lin, Verizon did not provide the Court with any evidence that they approached Mr. Lin between October 11, 2010 and June 29, 2011, to see if he knew how best to find Mr. Wan. In fact, it was their contact with Mr. Lin on June 30, 2011, that enabled Verizon to relocate Mr. Wan. A minute amount of effort was all that was necessary for Verizon to reach out to Mr. Lin, yet they never did. Verizon claims "it left no stone unturned to locate this evidence . . . ." Hearing Tr. 76:16, Oct. 24, 2011, Dkt. No. 1162. The Court cannot agree. The entire time they were unable to contact Mr. Wan, they were capable of contacting Mr. Lin. Then, almost nine months later, when Verizon finally decided to ask Mr. Lin how to get in touch with Mr. Wan, Mr. Lin gave Verizon the very information they needed to regain contact with Mr. Wan.

Before filing this motion, Verizon never notified the Court of the difficulties they were having reaching Mr. Wan, the co-inventor of the very patent they sought to protect. More importantly, Verizon never informed the Court of the possible existence of evidence proving the validity of the '748 patent. Additionally, they never informed the Court of any efforts to contact Mr. Wan's wife. Assuming that Verizon repeatedly attempted to contact Mr. Wan and could not reach him, Verizon should have asked Mr. Lin about his knowledge of Mr. Wan's whereabouts.

Even if Verizon was unable to reach Mr. Wan while he was abroad during the end of 2010, Mr. Wan returned to the country full-time in February 2011, three months before this Court's ruling on ActiveVideo's Motion for Summary Judgment. Verizon asks the Court to excuse their inability to contact Mr. Wan and to still find that they exercised due diligence. Yet the fact remains that Verizon needed only to ask for information prior to Mr. Wan's return. If they had done so, the Court believes that the necessary discovery could have taken place prior to the Court's ruling in May 2011. The Court does not expect and precedent does not dictate that Verizon be held to a standard of perfection in their quest for this evidence. Nevertheless, Verizon's nearly nine-month-long failure to reach Mr. Wan is something the Court simply cannot overlook.

### C. Whether the Evidence is Likely to Produce a New Outcome

If the Court found that the evidence was newly discovered and Verizon had exercised due diligence in obtaining it, the evidence still must be "likely to produce a new outcome if the case were retried, or is such that would require the judgment to be amended." *Boryan*, 884 F.2d at 771. The proffered evidence Verizon brings before this Court is insufficient to prove that it is likely to produce a new outcome if the Court amends its prior judgment.

There is a rebuttable presumption that the filing date of a patent is its invention date. *Ecolochem, Inc. v. Southern Cal. Edison Co.*, 227 F.3d 1361, 1371 (Fed. Cir. 2000). To overcome this presumption, Verizon must provide the Court with "evidence showing [they] invented the subject matter of [the] patent before the publication date . . ." of the purported prior art patent. *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576-77 (Fed. Cir. 1996). Verizon contends that the invoices Mr. Wan discovered at his home sufficiently refreshed his recollection

to show that the conception date of the '748 patent precedes the invention date of the '689 patent.

"Conception is the touchstone of inventorship, the completion of the mental part of invention." *Burroughs Wellcome Co. v. Barr Labs, Inc.*, 40 F.3d 1223, 1227-28 (citing *Sewall v. Walters*, 21 F.3d 411, 415 (Fed. Cir. 1994)). "It is the formation 'in the mind of the inventor of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice.' " *Burroughs*, 40 F.3d at 1228 (citations omitted); *see also Kridl v. McCormick*, 105 F.3d 1446, 1449 (Fed. Cir. 1997). The conception process can only be complete "when the idea is so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation." *Burroughs*, 40 F.3d at 1228 (citations omitted). Mr. Wan claims that, as of May 1996, he and Mr. Lin had conceived fully of the elements in claim 13 of the '748 patent. Wan Decl. ¶ 12.

> Claim 13 of the '748 patent requires:
>
> A method of retrieving and retransmitting data processing network information in response to a user selection request, comprising:
>
> transmitting first selection information to be displayed on a television;
>
> receiving a user selection request based on the transmitted first selection information;
>
> retrieving data processing network information, in a network format, corresponding to the user selection request;
>
> transforming the data processing network information from the network format having a first interactive element to a television format having a second interactive element; and
>
> transmitting the data processing network information in the television format to the television.

*Id.* Verizon has provided this Court with some evidence that Mr. Lin and Mr. Wan tinkered with

segments of the requirements of claim 13 of the '748 patent prior to June 1996. Verizon is not required to link each and every element of claim 13 of the '748 patent to evidence found in the invoices or in the inventors' declarations. Nevertheless, the vague descriptions contained within the invoices Verizon provides the Court do not show that the ideas were "clearly defined" in the minds of Messrs. Wan and Lin prior to June 1996. It is that standard to which the Court must hold Verizon. Mr. Wan claims that the descriptions contained within the invoices refreshed his recollection regarding the conception date of the '748 patent. However, the Court believes the invoices lack sufficient detail to prove that the conception of the '748 was clearly defined, and Verizon has not adequately proven that the requirements of claim 13 have been met.

The invoices Verizon has brought before the Court span from May 1996 to December 1996. To the extent that proof of clear conception can be found in invoices from the six months following May, this evidence would not change the Court's previous ruling because the invention date of the prior art patent was June 3, 1996. Mr. Wan provided the Court with an invoice from May that, in part, states that he "[i]nvestigated and evaluated Internet Browsing on Concierge network" and "[r]etrieved and analy[z]ed NetScape plug-in specification" and "created demonstration Concierge Network Browser using existing Browser components." Wan Decl., Attach. B. By itself, the invoice does not show a clearly defined conception date in the minds of Messrs. Wan and Lin. At most, it reflects the foundation of some work on the claim 13 patent, but it falls short of meeting the *Burroughs* standard. The following six months of invoices demonstrate that Messrs. Wan and Lin came up with some ideas before June 1996 but spent June through December attempting to clearly define their invention.

Verizon argues that the Court should not look at the invoices as isolated pieces of

11

evidence. They contend that the invoices and Mr. Wan's declaration collectively establish a May 1996 conception date. Defs.' Mem. Supp. 9. Notwithstanding Verizon's claims, the law requires that an inventor's testimony be corroborated. *Mahurkar*, 79 F.3d at 1577. "This requirement arose out of a concern that inventors testifying in patent infringement cases would be tempted to remember facts favorable to their case by the lure of protecting their patent or defeating another's patent." *Id.* (citations omitted). When determining whether the inventor's statements have been corroborated, courts apply a rule of reason analysis by which "[a]n evaluation of all pertinent evidence must be made so that a sound determination of the credibility of the inventor's story may be reached." *Price v. Symsek*, 988 F.2d 1187, 1195 (Fed. Cir. 1993) (citation omitted).

Verizon attempts to rely on the invoices as both corroborative evidence of Mr. Wan's declaration while simultaneously arguing that the invoices refreshed Mr. Wan's recollection. In performing its rule of reason analysis, the Court concludes that Mr. Wan's own invoices are insufficient corroboration of his statements. *See, e.g., Hahn v. Wong*, 892 F.2d 1028, 1032 (Fed. Cir. 1989) ("The inventor, however, must provide independent corroborating evidence in addition to his own statements and documents.") (citation omitted). Verizon claims that the Federal Circuit has found that invoices can be corroboration of inventor testimony. Reply Defs.' Mot. 6 (citing *Slip Track Sys., Inc. v. Metal-Lite Inc.*, 304 F.3d 1256, 1259 (Fed. Cir. 2002). While invoices may be used as corroboration, the Court's decision does not contradict the Federal Circuit's holding in *Slip Track* because the Court finds unavailing the lack of evidence outside of the invoices. In *Slip Track*, the Federal Circuit found other evidence in addition to the invoices in concluding that sufficient corroboration existed. *Slip Track*, 304 F.3d at 1269. The Court must be particularly vigilant before giving credence to potentially self-serving testimony.

12

Therefore, the Court finds that the evidence Verizon brings before the Court is unlikely to produce a different outcome.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Alter or Amend the Judgment Based on Newly Discovered Evidence is **DENIED**. The Court **DIRECTS** the Clerk to send a copy of this Order to the parties.

**IT IS SO ORDERED.**

Raymond A. Jackson
United States District Judge

Norfolk, Virginia
November 6, 2011